UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs,<br>vs. | :<br>: | |
| | : | C.A. No.: 06-164ML |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and | :<br>:<br>: | |
| DEPARTMENT OF CORRECTIONS, and | :<br>: | |
| ASHBEL T. WALL., Director of the Department of Corrections, in his official capacity, and | :<br>:<br>:<br>: | |
| JOHN DOE (ONE) – (NINE)<br>Defendants, | :<br>: | |

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS', STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, AND ASHBEL T. WALL, IN HIS OFFICIAL CAPACITY**

Now come Defendants, State of Rhode Island, Department of Corrections, and Ashbel T. Wall, in his official capacity (hereafter collectively "State Defendants") and pursuant to Fed. Civ. Pro. R. 56 respectfully move for summary judgment with respect to Plaintiff's entire Amended Complaint. The State Defendants also respectfully request that even in the absence of federal jurisdiction (Counts I and II), this Honorable Court exercise pendent jurisdiction over the remaining state claims in the exercise of judicial economy. The State Defendants respectfully urge that this Honorable Court enter Judgment for the State Defendants and against the Plaintiff.

DEFENDANTS

STATE OF RHODE ISLAND
DEPARTMENT OF CORRECTIONS
AND ASHBEL T. WALL, in his
official capacity

By his Attorney
PATRICK C. LYNCH
ATTORNEY GENERAL

____/s/ Michael W. Field_____
Michael W. Field, # 5809
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
Ph (401) 274-4400 ext. 2380
Fax (401) 222-2995

CERTIFICATION

I hereby certify that the instant Motion was e-mailed on the 22nd day of January, 2007, to the following individuals:

___/s/ Michael W. Field________

Joseph Anthony DiMaio, Esq.
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs,<br>vs. | :<br>: | |
| | : | C.A. No.: 06-164ML |
| STATE OF RHODE ISLAND AND<br>PROVIDENCE PLANTATIONS, and | :<br>:<br>: | |
| DEPARTMENT OF CORRECTIONS, and | :<br>: | |
| ASHBEL T. WALL., Director of the<br>Department of Corrections, in his official<br>capacity, and | :<br>:<br>:<br>: | |
| JOHN DOE (ONE) – (NINE)<br>Defendants, | :<br>: | |

**DEFENDANTS', STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, AND ASHBEL T. WALL, IN HIS OFFICIAL CAPACITY'S, MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The Plaintiff, Eduardo Hernandez (hereafter "Hernandez") brings this lawsuit alleging that his state detention from Thursday, June 16, 2005, through the morning of Wednesday, June 22, 2005[1] was unlawful and violative of federal and state law.

---

[1] 8 C.F.R. § 287.7(d) provides:
"[u]pon a determination by the Department [of Homeland Security] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." (Emphases added).

Since Hernandez was taken into State custody on Thursday, June 16, 2005, even if everything Hernandez alleges is accurate, his unlawful detention would not have begun until Monday, June 20, 2005. Hernandez was transferred to federal authorities on the morning of Wednesday, June 22, 2005, constituting a total of approximately two (2) days of alleged wrongful detention.

Although Hernandez mentions various "John/Jane Does," the only named defendants in this case are the State of Rhode Island, the Department of Corrections, and Director A.T. Wall, in his official capacity (hereafter collectively "State Defendants"). Since Hernandez's § 1983 lawsuit does not name any individuals, and is otherwise moot, the State Defendants respectfully submit Summary Judgment should be granted.

## II. BACKGROUND AND TRAVEL

Consistent with the Summary Judgment standard, the facts are set forth in the light most favorable to Hernandez.

Although Hernandez begins his complaint by focusing on his June 15, 2005 arrest and detention, *see Plaintiff's Amended Complaint, ¶ 19*, proper examination of this lawsuit must begin with April 15, 2005. On this date – April 15, 2005 – Hernandez was charged in the Sixth Division District Court with operating a motor vehicle on a public highway without a license in violation of R.I. Gen. Laws § 31-11-18. *Exhibit A.* The April 2005 offense was docketed by the Sixth Division District Court as No. 61-2005-06860 and court records evince that on April 15, 2005, Hernandez pled nolo contendre and was assessed a $350.00 fine and $117.00 in court costs. *Exhibit A.* Hernandez was not detained on April 15, 2005, and a docket sheet further demonstrates that although Hernandez made payments on April 15, 2005, and on May 2, 2005, Hernandez failed to appear for an Ability to Pay Hearing scheduled for June 8, 2005. *Exhibit A.* As a result, a bench warrant issued on June 9, 2005 for Hernandez's arrest. *Exhibit B.* There is no question that the June 9, 2005 bench warrant was for Hernandez and that the warrant set bail at $311.50. *Exhibit B.*

At this point, Hernandez's past finally converges with the facts set forth in the instant lawsuit. Indeed, on Wednesday, June 15, 2005, Hernandez was operating a motor-vehicle when he was stopped by the Pawtucket Police Department for a traffic infraction. *Plaintiff's Amended Complaint, ¶ 19.* During this stop, Hernandez acknowledged to the Pawtucket police officer that he was driving without a license and registration, but provided the officer a Texas identification card and verbally provided his social security number. *Exhibit C, p. 26.* Upon receiving Hernandez's information, the Pawtucket police officer returned to his vehicle and discovered the outstanding warrant for Hernandez's arrest. *Exhibit C, p. 27.* Hernandez was subsequently advised of the active warrant, taken into custody, transported to the Pawtucket Police Department, and remained in the custody of the Pawtucket Police Department until the next morning, Thursday, June 16, 2005. *Exhibit C, p. 27.*

On Thursday, June 16, 2005, Hernandez was transported from the Pawtucket Police Department to the Sixth Division District Court. *Plaintiff's Amended Complaint, ¶ 22.* Court records reveal that on June 16, 2005, Hernandez was, once again, charged with operating a motor vehicle on a public highway without a license[2] and pled nolo contendre. *Exhibit D.* Again, similar to Hernandez's April 15, 2005 nolo contendre plea, a fine and court costs were imposed, *see Exhibit D*, but unlike the April 15, 2005 hearing, Hernandez was not free to leave and instead remained in custody. Hernandez's deposition testimony makes clear that following his June 16, 2005 nolo contendre plea, a clerk handed Hernandez a court document indicating "$311.50 C/B" and "INS," *Exhibit E*, and, in Hernandez's own words, "[t]he judge said that I had INS problems,

[2] This was actually Hernandez's third offense since he had been charged (and pled nolo) to driving without a license in February 2005. *Exhibit C, p. 15.*

immigration problems." *Exhibit C, p. 59*. After the Judge advised Hernandez of the "INS problem[]," Hernandez related at his deposition that "[t]he officer next to [him] called [him] and guide[d him] back inside the cells." *Exhibit C, p. 63.*

Although Hernandez contends that following his nolo contendre plea he sought assistance from various "John Does" to either allow him to pay his fine with money he had on his person and/or to verify that he was a United States Citizen, *see Plaintiff's Amended Complaint, Counts I & II*, the record provides no support to these claims and finds no instance where Hernandez presented a birth certificate, social security card, or passport to support his citizenship.[3] Indeed, it appears that the only identification that Hernandez had on his person at the District Court – or at any time while in State custody – was a Texas identification card. *Exhibit F*. Moreover, although Hernandez contends that various "John Does" refused to examine his claims of citizenship, the record illustrates that at least one "John Doe" at the courthouse did review Hernandez's protestations. Specifically, Hernandez's deposition testimony relates:

> "And I tell [a "John Doe" officer], 'Look can you find me out if I can pay this right now, because they told me I can pay this right now. I have the money.
>
> "And he said okay, then he took the papers. He went to find out what was going on. And he came back and said to me 'You had immigration problems.'" *Exhibit C, p. 72-73.*

Not only did Hernandez have the detainer, but court records reveal that on June 16, 2005, the Sixth Division District Court issued a "Mittimus" Order addressed to "any Officer and to the Warden of the Adult Correctional Institutions." *Exhibit G*. The

---

[3] Even if Hernandez had provided such documentation, it is uncertain the legal landscape would have changed. See infra footnote 4 and discussion of Brady v. Dill, 187 F.3d 104 (1st Cir. 1999).

Mittimus referenced the April 2005 case by charge and docket number and directed its recipient that:

> "you are hereby commanded to take the defendant, to convey him/her to the Adult Correctional Institutions, and to deliver him/her together with this precept to the Warden thereof. The Warden is hereby required to receive the defendant into custody and safekeeping until this order is performed in all its parts or until the defendant is discharged by order." *Exhibit G.*

On the same day the Mittimus issued – June 16, 2005 – the Sixth Division District Court also issued a "Writ of Habeas Corpus," directing that Hernandez be brought back to the District Court on Tuesday, June 21, 2005. *Exhibit H.*

With the detainer and Mittimus in hand, Hernandez was committed to the Adult Correctional Institutions ("ACI"). Again, while Hernandez makes allegations that various "John/Jane Does" either did not allow him to make bail and/or did not verify his citizenship, *see e.g., Plaintiff's Amended Complaint, Counts I & II,* the record contains no support to these allegations and does not evince any situation where Hernandez presented a birth certificate, social security card, or passport to support his citizenship. In fact, the inventory sheet completed upon commitment to the ACI, and initialed by Hernandez, indicates that the only identification on his person upon presentment to the ACI was a Texas identification card. *Exhibit I.*

Pursuant to a Writ of Habeas Corpus, on June 21, 2005, Hernandez was presented before the Sixth Division District Court and, according to his Amended Complaint, posted bail. *Plaintiff's Amended Complaint, ¶ 72.* Despite clearing his state charges, Hernandez was remanded to the ACI where he remained until Wednesday, June 22, 2005. *Plaintiff's Amended Complaint, ¶ 74.* Thereafter, on the morning of June 22, 2005, an

agent from Immigration and Customs Enforcement ("ICE") arrived at the ACI whereupon Hernandez was transferred to federal custody pursuant to the INS detainer. *Plaintiff's Amended Complaint, ¶ 75.* Hernandez was transported to ICE, whereupon Hernandez's friends arrived with his passport, birth certificate, and social security card. *Exhibit C, p. 106-07*. After examining Hernandez's passport, federal officials released Hernandez. *Exhibit C, p. 107*.

In April 2006, Hernandez filed suit against the State Defendants, as well as certain federal defendants, alleging that the INS detainer was improperly issued. On September 7, 2006, this Honorable Court granted the federal defendants Motion to Dismiss due to Hernandez's failure to exhaust administrative procedures; but denied the State Defendants' Motion to Dismiss, which was premised upon Will v. Michigan Department of State Police, 485 U.S. 1005 (1989), and instead allowed Hernandez to amend his complaint to name individual defendants. *See Minute Entry for September 7, 2006*. Despite granting Hernandez's oral motion to amend on September 7, 2006, Hernandez did not file an amended complaint until the afternoon of January 8, 2007 – the same date discovery closed. Hernandez's Amended Complaint still names the State Defendants, but now also includes references to nine (9) "John/Jane Does." Hernandez's Amended Complaint still does not name any individuals or "persons" as defined in § 1983. The Amended Complaint contains seven (7) counts: (1) damages pursuant to § 1983, (2) injunctive relief pursuant to § 1983, (3) violations of the Rhode Island Constitution, (4) the tort of false imprisonment/false arrest, (5) a violation of R.I. Gen. Laws § 9-1-2, (6) individual liability, and (7) negligence.

Additional relevant facts will be set forth below as needed.

## III. STANDARD OF REVIEW

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986). Summary judgment is lawful and proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, "[s]ummary judgment is appropriate against a party who, after a sufficient time for discovery, 'fails to make a showing sufficient to establish the existence of a single element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Torraco v. Maloney, 923 F.2d 231, 232 (1st Cir. 1991)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)).

According to Fed. R. Civ. P. 56(e):

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. (Emphasis added).

Based upon the foregoing, the United States Supreme Court observed that the above two sentences of Rule 56(e) were added "to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its

pleadings." Celotex Corp, 477 U.S. at 325, 106 S.Ct. at 2554. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 250, 106 S.Ct. at 2511. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51, 106 S.Ct. at 2511. As the Court recognized:

> [n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether where is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Id. at 251, 106 S.Ct at 2511 (emphases in original).

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252, 106 S.Ct. at 2512.

## IV. THE DETAINER FOR PLAINITFF HERNANDEZ WAS FACIALLY VALID

In his Amended Complaint Hernandez contends, for the first time, that the detainer was not issued for him, with a date of birth of November 6, 1982; but was actually issued for an Eduardo Hernandez, with a date of birth of November 6, 1932. ***See e.g., Exhibit J (detainer).*** Although admittedly the detainer's legibility is challenging, Hernandez provides not a shred of evidence to support his claim. Nevertheless, to put to

rest any questions concerning the applicability of the detainer, the State Defendants obtained an affidavit from Daniel D. Sendroff, the Senior Special Agent who issued the detainer. Senior Special Agent Sendroff's affidavit represents that:

> "[o]n June 16, 2005, I [Agent Sendroff] placed an Immigration Detainer, Form, I-247, on a person arraigned at Sixth Division District Court, Providence, Rhode Island. The person arraigned and the person who the detainer was lodged against was Eduardo Hernandez, with a date of birth of November 6, 1982 (Nineteen Eighty-Two)." ***Exhibit K*** (emphasis added).

There can be little doubt that the detainer was indeed issued for the Plaintiff, Eduardo Hernandez, with a date of birth of November 6, 1982.

## V. LEGAL ANALYSIS

### A. Count I (Section 1983) and Count VI (Individual Liability)

Count I charges that defendants violated Hernandez's rights, privileges, or immunities secured by the United States Constitution or by federal law and seeks monetary damages through 42 U.S.C. § 1983. As discussed earlier, Hernandez's Amended Complaint fails to name any "persons." See Will v. Michigan Department of State Police, 485 U.S. 1005, 108 S.Ct. 1466 (1989). Consequently, "a cause of action for damages against [the State Defendants] will not lie." Wilson v. Brown, 889 F.2d 1195, 1197 (1st Cir. 1989). Since Hernandez is asserting a § 1983 violation against the State Defendants and is seeking monetary damages, Hernandez has no cognizable cause of action. See id. See also Wilson v. City of Boston, 421 F.3d 45, 59 (1st Cir. 2005)("a municipality cannot be held liable under § 1983 on a respondeat superior theory").

Apparently, in an effort to avoid the stranglehold of Will, Hernandez amended his complaint on January 8, 2007, but the Amended Complaint still does not identify any

individuals and instead references only nine (9) "John/Jane Does." It is axiomatic that since the "John/Jane Doe(s)" have never been identified or served, the claims involving the "John/Jane Doe(s)" will be "disregarded." See Forest v. Pawtucket Police Department, 290 F.Supp.2d 215, 215 n.1 (D.R.I. 2003); Pride Chrysler Plymouth, Inc. v. Rhode Island Motor Vehicle Dealers' License Commission, 721 F.Supp. 17, 18 (D.R.I. 1989)("plaintiffs have not identified any party as a John Doe and thus the Commission is now the only defendant to this suit"). See also Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1990)("unless these John Doe defendants are named and served with process within a reasonable time after their identities become known, they may not be considered parties to the case"). Accordingly, the "John/Jane Does" should be dismissed from this Amended Complaint and the State Defendants submit that Count I must be dismissed.[4]

Furthermore, Hernandez alleges in Count VI (Individual Liability) that the corporeal defendants are individually liable for their action or inaction associated with his

[4] Even if the Amended Complaint did contain individually named defendants, the doctrine of qualified immunity would apply. While the absence of individually named defendants makes extended qualified immunity discussion unnecessary, it suffices that reliance upon a facially valid writ provides an individually named defendant the defense of qualified immunity. See Whiting v. Kirk, 960 F.2d 248 (1st Cir. 1992). See also Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96 (1979)(an officer executing an arrest warrant is not required to investigate every claim of innocence); Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004). Even taking into consideration Hernandez's claims of innocence, the qualified immunity defense would still be applicable. See Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999)("[t]o place on police officers the additional burden of determining, after a legitimate arrest pursuant to a facially valid warrant, whether the person detained is or is not the guilty party would blur the usual separation of functions."). Also it bears noting that Hernandez's situation seems unlikely to implicate any constitutional provisions. See id. at 110 ("once a 'matched arrest pursuant to a facially valid warrant supported by probable cause has been completed, a detainee's protections from unlawful custody no longer repose in the Fourth Amendment"); Baker, 443 U.S. at 145, 99 S.Ct. at 2695 (observing that 3 day detention over holiday weekend did not implicate due process). Further discussion of the specific facts related to Hernandez occurs infra, pp.16.

detention. *See e.g., Plaintiff's Amended Complaint, ¶ 128*. Not only does Count VI not articulate an independent cause of action upon which any liability could be imposed, but as just related, Hernandez's Amended Complaint names no individuals. Absent a cause of action and an individual defendant, Count VI must also be dismissed.

B. Count II – Section 1983 Injunctive Relief

Even though Hernandez was released from the Department of Corrections on June 22, 2005, and has no pending charges, detainers, or warrants, Count II seeks injunctive relief pursuant to § 1983. Specifically, Hernandez seeks injunctive relief concerning what he asserts to be improper policies or practices by the State Defendants. For instance, Hernandez claims it is a policy or practice to:

1. "deny persons whom are the subject of a Detainer the opportunity to post bail in those instances where bail is established by a State District Court Judge, and the non-posting of bail is the only basis for the individual to be Otherwise Detained," *see Plaintiff's Amended Complaint, ¶ 102*,

2. "not make reasonable inquiry to determine United States Citizenship of those persons subject to a Detainer," *see Plaintiff's Amended Complaint, ¶ 103*,

3. "deny persons housed at the Prison whom are Otherwise Detained there solely pending the payment of bail, and whom are the subject of a Detainer the opportunity to make a cost free phone call without waiting for a "PIN" number for the purposes of establishing their United [States] Citizenship," *see Plaintiff's Amended Complaint, ¶ 104*, and

4. "intentionally refuse to review or otherwise examine proof of US Citizenship when presented with documents such as a United States Birth Certificate, a United States Social Security Card, a State Identification Card, a United States Passport, or City or Town Police Department investigative reports or records regarding an individual's identity and national origin," *see Plaintiff's Amended Complaint, ¶ 105.*

Hernandez points to no "official policy" by the State Defendants to support his claims.

1. Mootness

Initially, the mootness of Hernandez's argument must be examined. As Hernandez acknowledges in his Amended Complaint, he was released from the ACI on June 22, 2005. *Plaintiff's Amended Complaint, ¶ 75.* Moreover, Hernandez has no pending charges, warrants or detainers, and in fact, with the exception of the motor-vehicle offenses discussed in this memorandum, has never even been charged with a criminal offense. *Exhibit C, p. 15.*

It is well settled that "an actual controversy must exist at all stages of litigation to sustain federal court jurisdiction." Wilson v. Brown, 889 F.2d 1195, 1197 (1st Cir. 1989). One exception to this rule is if a case is "capable of repetition yet evading review." Id. "Under this exception, a case can be heard, despite the absence of a live controversy, if 'there [is] a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Id. Several cases demonstrate that this exception is not available to Hernandez.

In Smith v. Hundley, 190 F.3d 852 (8th Cir. 1999), an inmate incarcerated at the Iowa State Penitentiary (ISP) brought a lawsuit seeking injunctive and declaratory relief on the grounds that his First Amendment rights had been infringed, allegedly by denying access to items necessary for the practice of his religious faith. Prior to trial, Inmate Smith was transferred from ISP to Anamosa State Penitentiary (ASP), but nonetheless argued that since he had been previously transferred from ASP to ISP, had a history of disciplinary problems that might suggest a re-transfer to ISP, and had twenty years remaining on his sentence, he had a reasonable expectation of returning to ISP, and therefore, his case was not moot. The district court agreed, concluding that based upon

the above circumstances Inmate Smith had a "reasonable prospect of being transferred back to ISP," and therefore, the case was not moot. Id. at 854. On appeal, the Eighth Circuit Court of Appeals reversed.

Specifically, the Court of Appeals cited its past precedent and noted "an inmate's claims for declaratory and injunctive relief to improve prison conditions were moot when [the inmate] was transferred to another facility and was no longer subject to those conditions." Id. at 855 (emphasis added). Since Inmate Smith "was transferred to ASP, and he is no longer subject to the alleged unlawful policies or conduct of ISP officials," the Court of Appeals determined that "Smith's claims for relief [were] moot." Id.

Thereafter, the Court of Appeals examined Inmate Smith's assertion that because he was likely to be subject to the same conditions at ISP again, his case fell within the "capable of evading review" exception. Id. The Eighth Circuit observed that this exception applies where the following two circumstances are simultaneously present: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. See also Maine State Building and Construction Trade Council v. United States Department of Labor, 359 F.3d 14, 18 (1st Cir. 2004)(applying the same standard). The Court of Appeals further explained "the doctrine applies only in exceptional situations." Smith, 190 F.3d at 855. After reviewing this criteria, the Court of Appeals observed that "[i]n his brief, Smith asserts that he has been transferred from ASP to ISP before, and being subject to the whims of the Iowa Department of Corrections, 'can return to the Iowa State Penitentiary at any time." Id. As for this contention, the Court of Appeals noted:

> "Smith's theory of retransfer to ISP to be too speculative a basis for declaratory relief. There is no indication in the record that Smith is likely to be sent back to ISP. * * * Nor, do we think that the mere possibility of transfer to another prison within the Iowa correctional system, of which ISP is one, is sufficient to bring Smith's claim within the narrow exception to the mootness doctrine." Id.

Accordingly, the Court of Appeals determined that Inmate Smith's claim for injunctive relief did not fall within the "capable of evading review" exception, and therefore, was moot. See also Wilson v. Brown, 889 F.2d 1195, 1197 (1st Cir. 1989)("Since Wilson is no longer incarcerated in Rhode Island, it is mere speculation rather than 'demonstrated probability' to say that he would again be returned to Rhode Island."); Gilday v. Boone, 657 F.2d 1, 3 (1st Cir. 1981)(lawsuit alleging improper procedures while in segregation affirmed as moot since plaintiff released from segregation but still incarcerated).

In contrast to the above cited cases where inmate plaintiffs were no longer subject to the complained conditions, but nonetheless still within the confines of a correctional system, in this case Hernandez is not even in the custody of any correctional system, nor does he face the prospect of incarceration. Perhaps for this reason – and to maintain federal court jurisdiction – Hernandez avers he is "likely" to be "subject to future deprivations similar to those which occurred on and after June 16, 2005." ***See Plaintiff's Amended Complaint, ¶ 106***. Hernandez gives no indication of why he is "likely" to be subject to the same conditions at the Department of Corrections,[5] nor does Hernandez

[5] In his Amended Complaint, Hernandez suggests that the "coincidence of his name on the Detainer" is a reason that he is likely to face future incarceration. In doing so, Hernandez appears to maintain that the detainer was not issued for him, with a date of birth of November 6, 1982, but was issued for a different Eduardo Hernandez with a date of birth of November 6, 1932. The discussion is Section IV, supra, sufficiently dispels this misconception.

present anything other than unsupported speculation or conjuncture concerning the likelihood of future incarceration. See Preiser v. Newkirk, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335 (1975)(allegations of a likely transfer may not be based on mere speculation). Certainly, Hernandez's situation where he has no pending charges and only a past arrest in June 2005 for failing to appear, suggest future incarceration is unlikely and far more speculative than the inmate transfer cases discussed above. Consequently, Hernandez's claim under the present factual circumstances renders Count II moot and not within the stated exception. See Smith, 190 F.3d at 855.

2. Hernandez Presents No Evidence of Improper Procedures or Policies

Notwithstanding the above, Hernandez presents no evidence that any of his allegations are actually policies/practices of the State Defendants. By itself, this omission is fatal. See Wilson, 421 F.3d at 59 ("a municipality is liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury'"). Since Hernandez points to no official policies, this constitutes another ground for dismissal.

Moreover, the State Defendants completely reject the suggestion that any of Hernandez's allegations are stated policies. For instance, Hernandez asserts that "Defendants deny persons housed at the Prison whom are Otherwise Detained there solely pending the payment of bail, and whom are the subject of a Detainer the opportunity to make a cost free phone call without waiting for a "PIN" number for the purposes of establishing their United [States] Citizenship." *See Plaintiff's Amended Complaint, ¶ 104*. In fact, Department of Corrections' Policy No. 24.02-1, p. 2, specifically directs that "[w]ardens of awaiting trial facilities ensure telephones are

available in the committing areas which do not require the use of PINs for bail purposes only."[6] *Exhibit L*.

Amended Complaint Paragraphs 103 and 105 similarly allege that the State Defendants do not make a reasonable inquiry to determine United States Citizenship and intentionally refuse to examine documents evidencing proof of citizenship. Again, Hernandez points to no "official policy" and overlooks his deposition testimony. As discussed earlier, in his deposition Hernandez related one instance where, in his own words, one of the "John Does" at the District Court "took the papers" and "went to find out what was going on." *Exhibit C, p. 72-73*. Upon returning, Hernandez was advised by this "John Doe" of his immigration problems. *Exhibit C, p. 73.* Hernandez similarly overlooks that while in State custody the only identification he had on his person was an identification card from the State of Texas. Obviously, the State Defendants cannot exam "documents evidencing proof of citizenship" when none are presented.[7]

Lastly, Hernandez points to no "official policy" that the State Defendants deny bail after it has been set by a District Court judge as alleged in Paragraph 102. In fact, DOC Policy No. 2.09 specifically provides that with approval, an inmate may transfer funds from their active accounts to "provide bail for self." *Exhibit M, p. 7-8*.

---

[6] It also bears noting that the inventory sheet completed upon commitment to the ACI reveals that Hernandez was provided the opportunity for a "bail call" and that Hernandez initialed the same. *See Exhibit I.*

[7] Even if Hernandez presented other identification documents, there does not appear to be any legal requirement that this identification be examined and/or acted upon. In fact, the opposite is true. See infra footnote 4. See also Brady, 187 F.3 104 (applying qualified immunity where plaintiff detained on facially valid warrant even though detaining officers subjectively believed plaintiff's pleas of innocence).

Accordingly, if this Honorable Court determines that Hernandez's claim is not moot, summary judgment should still be granted on Count II for the reasons discussed.

C. Remaining State Counts – III, IV, V, VII

Since Counts I and II represent the only federal claims, dismissal deprives this Honorable Court of subject-matter jurisdiction. Nonetheless, since the remaining state claims are equally baseless, in the interest of judicial economy, the State Defendants respectfully request that this Honorable Court exercise pendent jurisdiction.

In Count III, Hernandez seeks damages pursuant to various claims made under the Rhode Island Constitution, specifically Article I, §§ 2, 6, 8, and 9. None of these provisions expressly provide for a cause of action. See also infra footnote 4 (no constitutional violation and qualified immunity).

In Bandoni v. State, 715 A.2d 580 (R.I. 1998), the Supreme Court affirmed a trial justice's granting a motion to dismiss, determining that a cause of action pursuant to Rhode Island Constitution Article I, § 23, the Crime Victims' Rights Amendment, did not exist since the plain language of § 23 itself did not provide for a cause of action. The Court concluded that "in order for a cause of action for damages to resonate from the deprivation of crime victim's rights, the Legislature must create specific provisions or mechanisms as mandated by the framers." Id. at 601. Since Article I, § 23 did not provide for a cause of action, the Supreme Court determined that none existed.

The following year, the Supreme Court considered a complaint brought pursuant to the Civil Rights Act of 1990 (CRA), the State Fair Employment Practices Act (FEPA), and Rhode Island Constitution Article I, Section 2. In dismissing the constitutional claim, the Supreme Court stated that "since FEPA and the CRA provide comprehensive

remedies for employer discrimination, it is unnecessary to create or recognize a direct remedy pursuant to article I, section 2, of the Rhode Island Constitution." Folan v. State, 723 A.2d 287, 292 (R.I. 1999). The Court cautioned that "[s]uch a remedy [directly under the Rhode Island Constitution] should be reserved for situations where no statutory remedy is provided." Id.

Here, it is readily apparent that if Hernandez has indeed been harmed, he has multiple avenues to remedy his alleged injury. Most notably, Hernandez has available state tort claims. Since Hernandez has avenues available to seek redress, and since the Constitutional provisions he references do not provide for a civil cause of action, Count III must be dismissed.

Similarly, Hernandez claims that he has a statutory cause of action available pursuant to R.I. Gen. Laws § 9-1-2. In relevant part, R.I. Gen. Laws § 9-1-2 provides:

> "[w]henever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made. (Emphasis added).

As the plain language of R.I. Gen. Laws § 9-1-2 indicates, and as the Rhode Island Supreme Court has interpreted, "[t]o establish liability under [] § 9-1-2 . . . a plaintiff must first establish that [a] defendant engaged in criminal activity." Zarrella v. Minnesota Mutual Life Insurance Company, 824 A.2d 1249, 1261 (R.I. 2003). Since Hernandez presents no evidence of criminal activity, Count V must also be dismissed.

Lastly, the tort claims in Counts IV and VII should be dismissed. An "essential element" of a false imprisonment tort "is the restraint of another person without legal

justification or without any color of legal authority." Mann v. Cannon, 831 F.2d 54, 63 (1st Cir. 1984)(emphasis added). Here, it is undisputed that the State Defendants detained Hernandez pursuant to facially valid bench warrant, detainer, and Mittimus. Because the State Defendants acted with legal authority and with legal justification, as a matter of law, Hernandez cannot establish a false imprisonment tort claim. See Moody v. McElroy, 513 A.2d 5, 8 (R.I. 1986)("A validly executed and prepared warrant is justification for acts done under its authority and absent special circumstances, it will protect the person who prepared it as well as those who execute it.").

Similarly, Hernandez's claim of negligence against the State Defendants must be dismissed. As detailed throughout this memorandum, the State Defendants did nothing but execute the facially valid detainer, bench warrant, and Mittimus orders. Moreover, as made clear by the qualified immunity case law and discussion, had Hernandez named individual officers, these officers would be entitled to qualified immunity based upon their objectively reasonable conduct. Having determined that the actions or omissions that give rise to this complaint were objectively reasonable, as a matter of law, Hernandez is precluded from proving that any defendant, including the State Defendants, breached a standard of care by failing to act in a reasonable manner.[8] For this reason, the tort claims must also be dismissed.

---

[8] When asked at his deposition what the State Defendants did that they should not have done, Hernandez replied that "they should have checked my personal information better before putting an INS hold on me." *Exhibit C, p. 110*. Later, Hernandez explained that the State Defendants "should have listened to me when I told them that I was legal . . . . they just didn't listen to me, they didn't care about checking my personal information at that time." *Exhibit C, p. 113*. For the reasons previously explained in this memorandum, and because the State Defendants did not issue the detainer, Hernandez's claims are not legally cognizable.

## VI. CONCLUSION

For the reasons explained, Hernandez's claims against the State Defendants relating to his detention are not cognizable. As explained in footnote 8, Hernandez's accusations rest largely not with the State Defendants, who merely executed the facially valid detainer, warrant, and mittimus, but with those that issued the detainer.

The State Defendants respectfully submit that Counts I and II must be dismissed and respectfully request that this Honorable Court exercise pendent jurisdiction and reach the remaining state counts in the exercise of judicial economy. The State Defendants pray that this Honorable Court deny and dismiss all of Hernandez's claims and enter Judgment in favor of the State Defendants.

STATE DEFENDANTS
By their Attorney
PATRICK C. LYNCH
ATTORNEY GENERAL

___/s/ Michael W. Field______
Michael W. Field, # 5809
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
Ph (401) 274-4400 ext. 2380
Fax (401) 222-2995

CERTIFICATION

I hereby certify that the instant Memorandum was e-mailed on the 22nd day of January, 2007, to the following individuals:

_/s/_Michael W. Field__________

Joseph DiMaio, Esq.
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861