# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

EDUARDO HERNANDEZ
Plaintiff

VS

C.A. NO: 06-164ML

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS, and

DEPARTMENT OF CORRECTIONS, and

ASHBEL T. WALL, Director of the Department
Of Corrections; in his official capacity, and

JOHN DOE (ONE), Warden of the
Department Of Corrections
Intake Service Center, in his official
and individual capacity and;

JOHN DOE (TWO), a/k/a "bailiff",
Alias John Doe, in his official
and individual capacity, and

JOHN DOE (THREE) a/k/a "First Guard On Duty"
Alias John Doe, in his official
and individual capacity

JOHN DOE (FOUR) a/k/a "Second Guard On Duty"
Alias John Doe, in his official
and individual capacity

JANE DOE (FIVE) a/k/a "Female Guard on Duty")
Alias John Doe, in his official
and individual capacity

JOHN DOE (SIX) a/k/a "Authority Figure On Duty "
Alias John Doe, in his official
and individual capacity

JOHN DOE (SEVEN) a/k/a "Correctional Officer")
Alias John Doe, in his official
and individual capacity

| | |
|---|---|
| | ) |
| JOHN DOE (EIGHT) a/k/a "Employee Assigning PIN's" | ) |
| Alias John Doe, in his official | ) |
| and individual capacity | ) |
| | ) |
| JOHN DOE(S) (NINE) a/k/a "Unidentifiable Guards on Duty") | ) |
| Alias John Doe, in his official | ) |
| and individual capacity | ) |

**PLAINTIFF'S, FIRST STATEMENT OF DISPUTED FACTS ("FSDF")**

**NOW** comes the Plaintiff, EDUARDO HERNANDEZ, ("Eduardo") and pursuant to Local Rule 56, states the following facts asserted in the Defendants Statement of Undisputed Facts ("Document 24") are **DISPUTED**:

¶10[1]. "After pleading nolo contender, Hernandez was advised by a court clerk and the District Court Judge that detainer had been issued for him by Immigration and Customs Enforcement a.k.a. I.N.S." (Id.). A proper reading of Defendant's "*Exhibit C, p. 59*[2]," indicates only that Hernandez was advised that he had immigration "problems" (see *Exhibit C, p. 59, l. 16-17).* Based on Hernandez's deposition testimony, there was no reference to an immigration detainer by the District Court Judge (Id.). Plaintiff's deposition testimony indicates that the only reason he was held by the State Defendants was that he needed to pay (see Exhibit 2[3], p99 lns 5-7; also lns 19-24). There is no

---

1 All paragraph reference symbols ("¶") within this document are those from the Defendants' Statement of Undisputed Facts (Document #24).

2 All references to lettered Exhibits in this FSDF are those which were originally referenced by the Defendants in their Document 24, and their Memorandum in Support of Motion of Summary Judgment ("Document 23").

3 References to numbered Exhibits are submitted by Plaintiff and are attached to Plaintiff's Memorandum in Opposition to the State Defendant's Motion for Summary Judgment.

document indicating that a District Court Judge ordered Eduardo to be incarcerated as a punishment or that he be incarcerated because of an alleged detainer. Plaintiff can find no authority that permits the State Defendants to order an individual incarcerated at the correctional facility due exclusively to an alleged detainer.[4]

¶11. "A detainer was indeed issued for the Plaintiff, Eduardo Hernandez, d.o.b. November 6, 1982. *Exhibit K*." Plaintiff disputes this fact since a plain reading of the four-corners of the detainer, *Exhibit J*, referred to the detention of "the above named inmate of your institution" and that person is further identified in as "alien" in the "Name of alien" section. Id. *Exhibit J* also makes reference to the alien/inmate's "Nationality" as "??", and further references the year of birth as "1932" (see *Exhibit J* ). It should be noted that at the time of the detainer's issuance, Hernandez was not an "inmate" since he was not ordered to serve any period of incarceration for any reason, (see ¶1, ¶25; see also *Exhibit D*; see also *Exhibit G*[5]) and was entitled to release from State Custody upon the posting of bail (see *Exhibit G*). It was not until much after the fact, and after the institution of the present litigation that *Exhibit K* was generated to explain the ambiguous[6] *Exhibit J*.

---

4 "Filing a detainer is an informal procedure in which the INS **informs prison officials** that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution." (*quoting* Giddings v. Chandler, 979 F.2d 1104, 1105 n.3 (5th Cir. 1992). Martinez v. Gonzales, 2005 U.S. Dist. LEXIS 20438 (D.R.I. 2005).

5 Plaintiff's copy of *Exhibit G* is illegible on the left margin, and assumes the court copy clearly displays check boxes which appear on the original "Mittimus" form, which conforms with the attached Exhibit 1.

6 Exhibit J is described here as ambiguous since it instructed the law enforcement agency to detain an "alien", whom was an "inmate", and with no known or questionable "??" national origin, born in 1932.

As a matter of law, the Mittimus could not be issued unless the Plaintiff either was not entitled to bail, or failed to post or pay bail, or was ordered to be incarcerated upon a sentence of conviction requiring Plaintiff be transported to the correctional institution.

¶15. "At least one state official reviewed Hernandez's situation on June 16, 2005, while Hernandez was being held at the courthouse and determined that Hernandez was being held on detainer. *Exhibit C, 72-73"*. (Id.) This is a mischaracterization of the testimony contained in *Exhibit C.* The language referenced refers to an immigration "problem"[7] and does not refer to a detainer (Id.) and gives no indication whether that person even read the detainer or was informed by another. Moreover, the statement is taken out of context. The context of the inquiry was in response to Plaintiff's direct request to pay bail. In the correct context, the statement supports a finding of intent and refusal to assist the Plaintiff in posting his bail because of an imagined impediment to the payment of bail, as distinguished from the timing of the Plaintiff's release after bail is posted.

¶17. "At no time while at the courthouse, or at the Department of Corrections, did Hernandez present officers with a birth certificate, social security card, or passport." Plaintiff disputes this fact on the basis that if fails to comply with Local Rule 56(a)(2). The proffered fact is also disputed because testimony indicated that Plaintiff attempted to present his papers by having friends bring them to the correctional institution on visiting day, but the Defendants did not let them bring them inside. (Exhibit 2 pg 92, lns 2-15). Last, the proffered fact is disputed because the State Defendants created the very conditions which prohibited the Plaintiff from presenting those papers. Lastly, the statement is disputed based upon relevancy since the local law enforcement agency had already performed an identification verification and determined the Plaintiff's "PLACE OF BIRTH: CALIFORNIA", and computer check of "PERSONS: State & Federal" (see Exhibit 3), and the State Defendants had prior dealings with the Plaintiff at the courthouse with no indication of any immigration problems. *Exhibit A.*

---

7 Plaintiff agrees he had immigration "problem", but defines that problem within the context of this litigation as those acts or inactions which are the subject matter of Plaintiff's Amended Complaint. Since he was a U.S. citizen, as a matter of law, it was a legal impossibility for that "problem" to be an immigration detainer since he was not an "alien."

¶20. "On the morning of June 22, 2005, an agent from Immigration and Customs Enforcement arrived at the Adult Correctional Institution, whereupon Hernandez was released from State custody and transferred to federal custody pursuant to the detainer." Defendant misquotes *"Plaintiff's Amended Complaint ¶75"*, which states "The Defendants released the plaintiff from Prison when and ICE agent (herein "Immigration Agent") arrived on June 22, 2005. *Plaintiff's Amended Complaint ¶75.* Moreover, if the Defendants were acting pursuant to the detainer the Plaintiff would have posted bail, his United States Citizenship Status would have been verified, and he would not have bee sent to prison. The implication that any conduct performed "pursuant to the detainer" is therefore challenged. In addition, the detainer provides for "INS to assume custody of the alien." *Exhibit J.* But for refusing to accept the Plaintiff's bail, the Plaintiff would have been released at the courthouse since otherwise there would have been no legal mechanism for the State Defendants', or the District Court Judge, to order the Plaintiff's incarceration in Prison.

¶23. "Upon commitment to the Department of Corrections, Hernandez had access and an opportunity to use a telephone to make a bail call without the use of a "PIN." Plaintiff disputes that *Exhibit I* supports this fact. There was no testimony that the significance of the Plaintiff's initials on *Exhibit I* supports this contention, nor does the exhibit make reference to a "PIN"; nor did Defendants support this contention with an affidavit from the person whom may have presented and explained the significance of the box marked "Bail Call" to the Plaintiff before he initialed that line. Since *Exhibit I* also indicates that Plaintiff had upon his person or his belongs sufficient money to post[8] bail (*Exhibit I)* it is more probable that this box was checked by the Plaintiff since he had money for bail and did not need to make a bail call.

---

8 Exhibit 1 indicates bail was set in the amount of $311.50, Exhibit I indicates that the Plaintiff had at lease $582.00 in cash.

¶25. "Hernandez was detained by the State Defendants pursuant to one or more of the following facially valid documents: June 9, 2005 bench warrant, detainer, and Mittimus order." This contention is disputed since it fails to comply with Local Rule 56(a)(2). In addition, the bench warrant was "withdrawn" by the District Court Judge on June 16, 2005 (*Exhibit A*), immediately before the facts giving rise to the Plaintiff's complaint were known by the Plaintiff. This contention also contains a compound offer of several facts regarding the legal significance of a bench warrant, a detainer, and a mittimus order which make it difficult to understand exactly which fact is proffered. Last, the contention draws unsupportable conclusions specifically regarding the facial validity of those documents particularly since by admission "the detainer's legibility is challenging"[9], the detainer contained a typographical error *(see Exhibit K; also compare* Document 23, pg8 referring to *Exhibit J* (detainer) "1932" *with Exhibit K* "(Nineteen Eighty-Two)"), was not issued by a neutral and detached magistrate[10], was silent regarding Nationality, required the enforcing officer to make a determination regarding "alien" status, referred to the person to be detained as an "inmate",, and failed to comply with the Fourth Amendment requirement that it describe with particularity the person whom was the subject of the detainer, thus making *Exhibit J* facially invalid. While the mittimus was facially valid, and required the State Defendants to unconditionally accept the Plaintiff's bail as a ministerial function, which would have triggered his earlier release[11] upon the payment of that bail it was issued upon the misinformation presented to the District Court Judge regarding either the Plaintiff's ability to post bail right then and there, or based upon his citizenship, or both.

---

9 Document 23, p8.

10 see generally Wilson v. City of Boston, 421 F.3d 45, 57 (1st Cir. 2005).

11 "earlier release" in this instance refers either to the total elimination of any imprisonment on Thursday, June 16, 2005, or would have started the 48-hour clock resulting in release on Monday, June 20, 2005, as submitted by the State Defendants (Document 23, FN1).

¶28. "The State Defendants did not put an INS hold[12] on Hernandez. *Exhibit K*." Plaintiff disputes this contention since *Exhibit K* does not support this assertion. As a matter of fact, just the opposite is true, the State Defendants did put an INS hold on the Plaintiff (see Exhibit 4 "ISC[13] HOLD"; see Exhibit 5 "INS ONLY"[14]; see also *Exhibit E* "311.50 C/B, INS"; see also *Exhibit C*, pg110, lns 6, 14, 22). *Exhibit K* does not use the "hold" terminology, *Exhibit K* refers to an "Immigration Detainer –Notice of Action" Id. The State Defendants otherwise provided the District Court Judge with misinformation regarding either the Plaintiff's ability to post bail right then and there, or based upon his citizenship, or both.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

**CERTIFICATION**

I hereby certify that on February 8, 2007, a true copy of the within, was served on Michael W. Field, Esq., at "mfield@riag.ri.gov" by electronic "CM/ECF" means only.

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.

---

12 While the Plaintiff can find no official codification of the "hold" terminology, it is a word originated by the State Defendants, and describes the State Defendant's exercise of certain authority over the Plaintiff. see Exhibit 5 "INS ONLY"12; see also Exhibit E "311.50 C/B, INS"; see also Exhibit C, pg110, lns 6,14, 22 referencing the word "HOLD".

13 "ISC" is a common acronym the Department of Corrections Prison building, Intake Service Center, where the Plaintiff was imprisoned.

14 This appears in handwriting, diagonally, in the upper left corner of this exhibit.