**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

EDUARDO HERNANDEZ
Plaintiff

VS

C.A. NO: 06-164ML

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS, and

DEPARTMENT OF CORRECTIONS, and

ASHBEL T. WALL, Director of the Department
Of Corrections; in his official capacity, and

JOHN DOE (ONE), Warden of the
Department Of Corrections
Intake Service Center, in his official
and individual capacity and;

JOHN DOE (TWO), a/k/a "bailiff",
Alias John Doe, in his official
and individual capacity, and

JOHN DOE (THREE) a/k/a "First Guard On Duty"
Alias John Doe, in his official
and individual capacity

JOHN DOE (FOUR) a/k/a "Second Guard On Duty"
Alias John Doe, in his official
and individual capacity

JANE DOE (FIVE) a/k/a "Female Guard on Duty")
Alias John Doe, in his official
and individual capacity

JOHN DOE (SIX) a/k/a "Authority Figure On Duty "
Alias John Doe, in his official
and individual capacity

JOHN DOE (SEVEN) a/k/a "Correctional Officer")
Alias John Doe, in his official
and individual capacity

JOHN DOE (EIGHT) a/k/a "Employee Assigning PIN's" )
Alias John Doe, in his official )
and individual capacity )
)
JOHN DOE(S) (NINE) a/k/a "Unidentifiable Guards on Duty") )
Alias John Doe, in his official )
and individual capacity )

**OBJECTION TO DEFENDANTS',**
**STATE OF ROHDE ISLAND, DEPARTMENT OF OCRRECITONS, AND AHSBEL T. WALL,**
**IN HIS OFFICIAL CAPAICTY'S, MOTION FOR SUMMARY JUDGMENT**

**NOW** comes the Plaintiff, EDUARDO HERNANDEZ, ("Eduardo") and does hereby object to the State Defendants, State of Rhode Island, Department of Corrections, and Ashbel T. Wall, in his official capacity (hereafter collectively "State Defendants"), motion for summary judgment.

In support of this objection, and pursuant to the Local Rules of Civil Procedure, Plaintiff attaches hereto his First Statement of Disputed Facts ("FSDF"), his First Statement of Undisputed Facts ("FSUF"), and his Supporting Memorandum of Law.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.______
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

**CERTIFICATION**

I hereby certify that on February 8, 2007, a true copy of the within, was served on Michael W. Field, Esq., at "mfield@riag.ri.gov" by electronic "CM/ECF" means only.

/s/ Joseph-Anthony DiMaio, Esq.______
Joseph-Anthony DiMaio, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EDUARDO HERNANDEZ | ) | |
| | ) | |
| VS | ) | C.A. NO: 06-164ML |
| | ) | |
| STATE OF RHODE ISLAND AND | ) | |
| PROVIDENCE PLANTATIONS, and | ) | |
| | ) | |
| DEPARTMENT OF CORRECTIONS, and | ) | |
| | ) | |
| ASHBEL T. WALL, Director of the Department | ) | |
| Of Corrections; in his official capacity, and | ) | |
| | ) | |
| JOHN DOE (ONE), Warden of the | ) | |
| Department Of Corrections | ) | |
| Intake Service Center, in his official | ) | |
| and individual capacity and; | ) | |
| | ) | |
| JOHN DOE (TWO), a/k/a "bailiff", | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity, and | ) | |
| | ) | |
| JOHN DOE (THREE) a/k/a "First Guard On Duty" | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |
| | ) | |
| JOHN DOE (FOUR) a/k/a "Second Guard On Duty" | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |
| | ) | |
| JANE DOE (FIVE) a/k/a "Female Guard on Duty") | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |
| | ) | |
| JOHN DOE (SIX) a/k/a "Authority Figure On Duty " | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |
| | ) | |
| JOHN DOE (SEVEN) a/k/a "Correctional Officer") | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |
| | ) | |
| JOHN DOE (EIGHT) a/k/a "Employee Assigning PIN's" | ) | |
| Alias John Doe, in his official | ) | |
| and individual capacity | ) | |

)
JOHN DOE(S) (NINE) a/k/a "Unidentifiable Guards on Duty"))
Alias John Doe, in his official )
and individual capacity )

**PLAINITFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS', STATE OF ROHDE ISLAND, DEPARTMENT OF OCRRECITONS, AND AHSBEL T. WALL, IN HIS OFFICIAL CAPAICTY'S, MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION:**

The general facts regarding Plaintiff's suit are set forth in more detail in Plaintiff's Amended Complaint (Document 21) and Plaintiff's First Statement of Undisputed Facts ("FSUF"). Plaintiff disputes significant facts submitted by the State Defendants and attaches hereto and incorporates by reference herein Plaintiff's First Statement of Disputed Facts ("FSDF").

Additional facts relevant to Plaintiff's opposition of the arguments and issues raised in the State Defendants' Motion for Summary Judgment are addressed in detail with their respective argument, below.

**LAW:**

In determining a motion for summary judgment, Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCS Fed Rules Civ Proc R 56(c).

"In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. Harlow v. Fitzgerald, 457 U.S. 800, 816 (U.S. 1982).

Additional authorities germane to Plaintiff's arguments are cited with the respective arguments, below.

**ARGUMENT:**

**A) There are issues of material fact requiring a trial for their adjudication.**

1. Summary Judgment should be denied since the underlying facts relied upon by the State Defendants are inaccurate and/or untrue as further detailed in Plaintiff's First Statement of Disputed Facts ("FSDF"), attached hereto and made incorporated by reference as if set forth in full herein.

2. Summary Judgment should be denied since, as the State Defendants' astutely point out at the outset of their memorandum (Document 23), "...even if everything Hernandez alleges is accurate, his unlawful detention would not have begun until Monday, June 20, 2005[1]. Hernandez was transferred to federal authorities on the morning of Wednesday, June 22, 2005, constituting a total of approximately two (2) days of alleged wrongful detention. [2]". This introductory articulation comports with Harlow, supra, and provides insight into the defense strategy. This acknowledgment changes the complexion of the case from contested liability and contested damages, to one only of contested damages.

---

1 This is believed to be the expiration of the 48-hour period that would have required release of the Plaintiff on Monday, June 20, 2005, if for argument sake, the State Defendants could legally detain a United States Citizen and hold that person for 48 hours, and the Defendants allowed the Plaintiff to post bail on Thursday, June 15, 2005. If, however, the Defendant could not legally detain a United States Citizen without first implementing some process to protect the Plaintiff against an arbitrary and capricious detainer issued against a United States Citizens, then the wrongful detention becomes a total of seven (7) days.

2 see Document 23, FN 1.

Plaintiff's Amended Complaint and the Rules of Civil Procedure do not preclude liability if in fact the wrongful detention were only "approximately two (2) days"[3] as submitted by the State Defendants, since under Rule 8(f), of the Federal Rules of Civil Procedure, "[a]ll pleadings shall be so construed as to do substantial justice" (USCS Fed Rules Civ Proc R 8). Plaintiff submits, inter alia[4], that the earliest event giving rise to his cause of action began on Thursday, June 16, 2005, when the State Defendants enforced a detainer against him, a United States Citizen, not an "alien" and not an "inmate". It would be an injustice if the State Defendants escape liability with the argument that the **wrongful** detention was only two days, not seven days as pled.

3. Summary Judgment should be denied since, in the State Defendants "Introduction" (Document 23) many facts are put forth which are not substantiated by the State Defendants' Statement of Undisputed facts (Document 24) or by reference to exhibits attached to their memorandum (Document 23).

a. For example, the assertion that there is "no support" to claims that Plaintiff was not allowed to make bail and/or Defendants did not verify citizenship (Document 23, p4; also Id. p5) is contradicted by substantial references in the record where Plaintiff's articulated his desire to pay bail and that he was a United States Citizen (FSUF, ¶4);

b. Also unsupported and contrary to the facts is the State Defendants' assertion that Mr. Hernandez did not present[5] his birth certificate, social security card, or passport supporting his citizenship (Document 23, p4; compare FSUF, ¶6).

---

3 see Document 23, FN 1.

4 see generally Plaintiff's Amended Complaint, Document 21.

5 In light of the fact that the Plaintiff was in custody and only had his Texas state Id, this statement is an unfair characterization of the facts particularly since while in custody no State Defendant

c. The State Defendants mischaracterize the actions of "at least one 'John Doe' at the courthouse" (Document 23, p4). The statement "you had immigration problems" (Id. referring to *Exhibit C*, p. 72-73) is merely a restatement of information the Plaintiff was already aware. There is no indication that the "John Doe" did anything to either assist the Plaintiff in paying the specified bail, or to confirm or deny the Plaintiff's citizenship. (Id.)

d. The State Defendants' memorandum (Document 23) misconceives the purpose of the Mittimus Order[6]. Based on the common law[7], a brief detention for the purposes of posting bail in the courthouse does not require a Mittimus. The mittimus is "a judicial warrant of commitment into a correctional facility which is required for more than a brief detention" Gerstein v. Pugh, 420 U.S. 103, 116, FN 14 (U.S. 1975), and thus is not necessary for brief detention to post bail in the courthouse. A Mittimus is necessary in order for the prison or warden to allow the admittance of an individual into the custody of the prison or warden, pending the satisfaction of bail or to be held without bail[8], pending return to the court for further action. (see Exhibit 1). The document ordering return of an individual in prison to court, is known as a "Writ of Habeas Corpus" *Exhibit H.*

---

assisted or otherwise provided the Plaintiff with an opportunity to either go home and get these papers, or to make a phone call for the purpose of presenting these papers.

6 Document 23, p4 "Not only did Hernandez have the detainer, but court records reveals... a 'Mittimus' Order addressed to 'any Officer...' "

7 At common law, "[t]he justice of the peace would 'examine' the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody." Gerstein v. Pugh, 420 U.S. 103, 115 (U.S. 1975)

8 The clear copy of this document presented by the Plaintiff demonstrates that he had the right to be released pending the posting of bail. The check box next to "Held without Bail" is clearly empty. Exhibit 1.

It is inappropriate for the Defendants to include the detainer in a discussion[9] regarding the "Mittimus" because it implies that the detainer may as well be directed to "any Officer," which it is not[10]. Examination of the detainer clearly demonstrates that it is not directed to any person in their official capacity, and suggests that it may only apply after the person achieves the status as an "inmate".[11] The mittimus is not a document that is related in any way to an immigration problem. The State Defendants provide no support for any interpretation that relates either the mittimus or the habeas corpus to an immigration detainer. If the Plaintiff was provided the opportunity to pay bail at the courthouse, the mittimus would not have issued or would have been cancelled then and there, and the Plaintiff would not have been sent to Prison. The detainer operates to keep an individual whom is an "inmate" within the possession of the law enforcement agency (*Exhibit J*), not as a vehicle to gain admittance into the Prison.

e. In addition, the State Defendants appear to misplace significance in the combination of the Habeas Corpus, "with the detainer and Mittimus in hand" (Document 23, p5). The Plaintiff objects to the implied message that the Mittimus was issued or order commitment of the Plaintiff because of the detainer. Again, there is no documentary or testimonial support for this assertion, and is contrary to a plain reading of the Mittimus (see Exhibit 1) permitting release upon the payment of bail.

It is also notable that while the State Defendants spend much time regarding Plaintiff's prior contacts with the same courthouse (Document 23, p2-3), those facts only exacerbate the situation

9 supra, FN 6.

10 see generally *Exhibit J*.

11 see generally *Exhibit J*.

the State Defendants had ready access to this Plaintiff's history from their own records, and that history gave notice that Mr. Hernandez was not an alien (Document 23, p. 2 "Hernandez was not detained on April 15, 2005"). There was no reference to any immigration problems or issues prior to June 15, 2005. Id.

4. Summary Judgment should be denied since, contrary to the assertion that "Hernandez's Amended Complaint still does not name any individuals or "persons" as defined in §1983" (Document 23, p6), Plaintiff has identified nine (9) "John/Jane Does" Id. One of which has been identified through discovery by name, "Serge Etesse" (FSUF, ¶5), for which summons issued and was completed on Thursday, February 08, 2007. (FSUF, ¶9). The Amended Complaint does not simply enlarge the caption to contemplate involvement of unidentifiable and unknown "John/Jane Does", for hypothetical and unknown general statements of misfeasance, malfeasance, or negligence. The Plaintiff articulates a precise description of the living and breathing person actually involved based upon a badge number, physical appearance, or job function,[12] and based upon a very narrowly described time and place parameter.[13] Plaintiff further defines these actual living and breathing corporeal persons by articulating the precise conduct, or lack thereof, which is the subject of Plaintiff's complaint.[14] These are not fictitious persons pled with no evidentiary support merely to prevent dismissal. Plaintiff's deposition testimony is unrebutted[15] and supports a finding that actual persons were involved in the

12 see Document 21, ¶¶8-14.

13 see Document 21, ¶¶8-14.

14 see Document 21, ¶¶50-52; ¶¶54-55, ¶¶62-65, ¶66.

15 see FSUF, ¶4.

wrongful conduct[16]. Subsequent to the Plaintiff's deposition, taken three days prior to the close of discovery, the Defendants actually confirmed the fact that at least one of the John Does is a live person,[17] thus giving credence to the time, place, physical, and conduct descriptions given by the Plaintiff in his complaint and at his deposition, supra.

5. Summary Judgment should be denied since, more than a "mere scintilla" of evidence supports Plaintiff's claims. First, while the State Defendants quote the familiar "scintilla of evidence" standard, it should be noted that the State Defendants' do not have ownership rights on the whole of the evidence. A case such as this has a limited universe of evidentiary documents. By submitting those common documents, which the parties will argue supports their respective position; it does not by attrition thereby leave the responding party holding the empty "mere scintilla of evidence" bag.

**B) The detainer was not facially valid.**

1. The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Arizona v. Evans, 514 U.S. 1, 10 (U.S. 1995). There is no reason to believe that the detainer would enjoy any different rule.

2. In addition, the detainer fails to meet the definition of facial validity since the descriptive references on the detainer left its enforcement up to the arbitrary and capricious enforcement of

---

16 Id.

17 see FSUF, ¶5.

the law enforcement agency. By their own admission, "the detainer's legibility is challenging,"[18] and was challenging to such a degree that the State Defendants supplemented its description with an affidavit from the issuing agent[19]. Not only is the age of the individual subject to the detainer, it fails since it requires the law enforcement agency to make a legal determination regarding a "alien" status, and further describes the person as an "inmate" of questionable "??" nationality, born in 19<u>32</u> (FSUF, 8).

3. The State Defendant's reliance upon <u>Baker</u>[20] is misplaced. In <u>Baker</u>, the defendant was in prison based upon a warrant issued by a neutral and detached magistrate. In the present case, the bench warrant which had issued against the Plaintiff "withdrawn"[21] immediately before the facts giving rise to Plaintiff's awareness[22] of any immigration problem existed. At the moment the bailiff escorts the Plaintiff away from the Judge, there is no question that the District Court Judge completed his services regarding Mr. Hernandez, that the warrant was cancelled, and that bail was set as indicated on the Mittimus.[23]. The only reason for holding the Plaintiff was the misplaced reliance on the immigration detainer since the Plaintiff made repeated attempts to pay bail,[24] and since no warrant, issued by a neutral and detached magistrate, or order of incarceration required his detention or imprisonment.

---

18 Document 23, p8.

19 Exhibit K.

20 Document 23, FN4

21 Exhibit A

22 Plaintiff's awareness is supported by his testimony of "what happened...". See Exhibit 2, p63 lns 12-14.

23 Exhibit 1.

24 FSUF, ¶4

In practice, based upon the four-corners of the detainer and giving the words on it their ordinary meaning, the detainer appears to rely upon the due process protections which would have necessarily occurred before the individual could be regarded as an "inmate." Thus, if the alien was already in prison for other reasons,[25] there could be no constitutional deprivation. However, the landscape is entirely different if the individual is not "otherwise detained" by the local law enforcement agency. Such becomes the case if the Plaintiff posts bail at the courthouse before a mittimus is issued or if the District Court Judge is informed that the Plaintiff has funds with him to pay the bail, or if the bail is paid at the correctional facility. Under these circumstances, a constitutional violation exists, even if for just one second, since there are no other due process protections which justify detention beyond that time that it reasonably takes to verify an individual's citizenship. Based on the address clearly marked on *Exhibit J*, such verification was only across the street,[26] less than a football field away.

By contrast, Baker justified a three-day detention "pursuant to a valid warrant". Baker v. McCollan, 99 S. Ct. 2689, 2695 (U.S. 1979) which was issued upon probable cause. In addition to the challenges[27] the detainer faced, and the Plaintiff's arguments that the detainer did not comply with the Fourth Amendment's particularity requirement describing the person whom is the subject of the allegedly valid process which, in this case required clarification by the immigration agent[28]. Since the Plaintiff's warrant had been cancelled in the first instance, it no longer was the operative document resulting in the Plaintiffs continued detention once the

---

25 Exhibit J

26 Exhibit 8, also Plaintiff's Amended Complaint, ¶¶24, 33, & 76; also *Exhibit J*.

27 "the detainer's legibility is challenging. Document 23, p8.

28 Exhibit K.

Plaintiff was escorted away from the bench by John Doe (Two)[29]. At that moment, the Plaintiff's detention became wrongful. Moreover, the Baker Court held that a person arrested pursuant to a warrant issued on a showing of probable cause was not constitutionally entitled to a separate judicial determination that there was probable cause to detain him **pending trial**. Baker v. McCollan, 443 U.S. 137 (U.S. 1979). No trial was scheduled for the Plaintiff; no warrant justified Plaintiff's continued detention; and no Mittimus required Plaintiff be denied the right to pay the bail indicated thereon.

4. Plaintiff further challenges whether the Brady[30] discussion in Defendants Memorandum (Document 23, FN3, FN4, FN7) applies to an immigration detainer since Plaintiff can find no authority extending immunity to Defendants for reliance upon a facially valid immigration detainer since it is not an arrest warrant. Again, in addition to the issues discussed above regarding the "facial validity" supra, a significant difference between an arrest warrant, as was the case with the arrest warrant in Brady,[31] and the Plaintiff's detainer is that the former is issued by a neutral and detached magistrate, where the latter was issued by an immigration agent, Agent Sendroff,[32] not a neutral and detached magistrate.

5. Unlike Brady, reliance upon the detainer was not objectively reasonable in light of the fact that the detainer required a determination regarding "alien" status and confusing references to Nationality and year of birth. Thus, Defendants cannot claim reasonable reliance on the

29 This person has since been identified through discovery as Serge Etesse, and was served with Summons and the Amended Complaint on Thursday, February 28, 2007. see Exhibit 9.

30 Brady v. Dill, 187 F.3d 104 (1st Cir. 1999)

31 see generally Id.

32 Exhibit K.

detainer if they fail to take any effort, similar to a brief *Terry* stop, to establish the most significant factual premise to the detention, i.e. whether the person is an "alien." Plaintiff submits that a temporary and brief detention, solely for the purpose of establishing the "alien" aspect of the description contained on the detainer would have been reasonable, and could have been performed by simply walking the Plaintiff less than a football field across the intersection[33] to the immigration building. Ultimately, as demonstrated by the immigration agent on Wednesday, June 22, 2005, once the Plaintiff was out of the Defendant's custody, that brief inquiry did take place, the Plaintiff was allowed to present his passport, and the Plaintiff was released with apologies. Exhibit 2, p107, lns 2-12.

**C) The issue of facial validity of the detainer is a "red herring".**

1) The fact of the detainer only mitigates damages, it does not defeat liability. Without prejudice to the argument that a detention of a United States Citizen for only 48 hours pursuant to an immigration detainer implicates the Defendants, and only for argument sake, if Plaintiff was an alien, and not a U.S. Citizen, the enforcement or imposition of an immigration detainer on an "alien" is not an impediment to the posting of bail by that alien, it only prevents the alien from being released within 48 hours thereafter. It is objectively unreasonable to assume that a non-United States Citizen would enjoy better rights than a United Citizen. Therefore, if the alien enjoys certain rights within this great Country whereby he can only be detained for a period of no more than 48 hours, it is not reasonable to assume that a United States Citizen would enjoy less rights permitting him to be held longer on an immigration detainer and permitting the denial of his right to pay bail.

Even assuming the detainer is valid and that the Defendants may act upon that detainer, the Defendants' Motion for Summary Judgment fails to explain or identify any procedure or mechanism to prevent the unlawful arrest or imprisonment or detention of a United States

33 see Exhibit 8.

Citizen, in instances such as this where a detainer is intended[34] to be lodged against a United States Citizen. It is unreasonable that a United States Citizen can expect that his constitutional rights can be impaired by the State Defendants for one second, let alone two days[35] or three days or seven days.

**D) Count I (Section 1983) and Count VI (Individual Liability).**

1) Contrary to the State Defendant's assertion that the Plaintiff fails to name any "persons" the Plaintiff most certainly has,[36] one of them was served on February 8, 2007. (Exhibit 9). Since the State Defendants have complete access to the full names and addresses of all other individuals presently identified by the Plaintiff by other means,[37] their reliance upon Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1999) should be ignored since Plaintiff is entitled to a reasonable time after their identities become known to serve these individuals. Presently, the Rules of Civil Procedure require automatic disclosure of discovery. The Plaintiff's Complaint was not amended until after the Plaintiff's deposition. The Plaintiff's deposition was taken on Friday, January 5, 2007, only three days before the very close of discovery. The Amended Complaint was prepared, consistent with the previous order of the court requiring individuals be named, by naming those individuals in a manner that would match the testimony. The Amended Complaint, filed on the close of discovery, is entitled to the full benefits of the Rule 26 discovery provisions of the Federal Rules of Civil Procedure[38]. Without need of a discovery request, the

---

34 see Exhibit K.

35 This period makes reference to the time referenced in the State Defendants' Memorandum, Document 23, FN1; see also supra, FN1.

36 see supra section "A(4) "Summary Judgment should be denied..."

37 Id.

38 "[A] party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable

Amended Complaint gives notice[39] of additional individuals[40] likely to have discoverable information, i.e. John/Jane Does. While in all fairness to the State Defendants, Rule 26 disclosure of those individuals may not yet be due, out of like fairness to the Plaintiff, the State Defendants should not be permitted to marshal all the evidence regarding the persons, i.e. witness/defendant, names, addresses and telephone numbers and be allowed to contemporaneously argue in their motion for Summary Judgment that the Plaintiff has not identified them by name.

**E) Count II -Section 1983 Injunctive Relief.**

1) Mootness.

Plaintiff's request for injunctive relief is not moot since it is capable of repetition yet evading review. Wilson v. Brown, 889 F.2d 1195 (1st Cir. 1989). Plaintiff has demonstrated that he has been to the courthouse on more than one occasion. Supra. The State Defendants have admitted to the challenging nature of the detainer's legibility (supra) and Plaintiff has in detail articulated the susceptibility of the vague description in the detainer to arbitrary and capricious enforcement. (Supra.) Unless the State Defendants can provide evidence that the form of the detainer has changed, the Plaintiff is aware of no such change that would cure the problems inherent with the

---

information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;..." USCS Fed Rules Civ Proc R 26 (a)(1)(A)

39 At Plaintiff's testimony, the state was put on notice (see generally Exhibit 2, pp 121-122) of their duty to provide names and addresses of all people that actually spoke to the Plaintiff, based upon the times and places testified to by the Plaintiff, with the understanding that the actual address was not required, only some means to effectuate service of process. During the three days after the Plaintiff's deposition, a specific request was not sent by mail to the defendants, however the notice was provided just as clear at the Plaintiff's deposition that these people would be identified as "John Doe" for the time being and the stat's response was "Okay, that's fine." Exhibit 2, p122, ln 14.

40 see Document 21, ¶¶8-14.

detainer form and the processing of individuals with immigration problems within the courthouse, which are also discussed above. (Supra). Different that Wilson, Plaintiff is a resident of Rhode Island, therefore the likelihood of future similar deprivations is present. And while the State Defendants take issue with "¶106" of the Plaintiff's Complaint,[41] and with the coincidence[42] of name, it makes matters worse that may be it was intentional not a coincidence. Without some affirmative fact offered by the State Defendants, there is even more reason to believe that every time the Plaintiff interacts with any local law enforcement agency for any purpose, the result will be his wrongful detention pursuant to a detainer as an "alien".

2) Hernandez Presents Evidence of Improper Procedures or Policies.

Plaintiff's own testimony[43] establishes a practice of denying individuals the right to post bail when there is an immigration problem. Contrary to the State Defendant's position, which is not supported by affidavit or other evidence, Plaintiff is not testifying from wild speculation, but based upon events and conduct he actually witnessed. Plaintiff is not resting on mere allegations contained in his pleading, but upon testimony, summary judgment should be denied.

Again, it would be patently unfair to permit summary judgment to enter on the argument that "the State Defendants cannot exam 'documents evidencing proof of citizenship' when non are presented[44]" if the policy cited by the Defendants references use of a phone for "bail purposes only,[45]" and does not allow for the use of a phone to resolve immigration problems by calling

---

41 Document 23, p 14.

42 Document 23, p.14, FN5

43 see generally Exhibit 2.

44 Document 23, p16.

45 Exhibit L.

someone to bring the appropriate paperwork. No documents can possibly be presented if the State Defendants create and control the circumstances and conditions that could possible allow for those documents to be presented. The Plaintiff lacked the ability to go get those documents, unless the Defendants either released him or allowed him to call others to bring them on his behalf. Common sense cautions against daily travel in one's own state with important personal papers such as a passport, birth certificate, and social security card, unless they are needed for a specific purpose. It is unrealistic to expect that most people would have much more than a state identification if they did not have a valid drivers license such as the Plaintiff.

Last, regarding policy or practice of not permitting the Plaintiff to "provide bail for self"[46], that policy is meaningless unless it is explained and made available to persons. There is no indication that the Plaintiff was ever aware of this policy, or that he would have had that knowledge from any prior experience. It is clear that he was not allowed to provide bail for himself at any step of the procedure. It is disingenuous to argue that the Plaintiff voluntarily delayed his own release. The only reasonable interpretation is that either the Defendants did not make the Plaintiff aware of this policy[47], or let the Plaintiff know that the policy was not available to him.

**F) Remaining State Counts –III, IV, V, VII**

1) The issue of qualified immunity does not defeat liability for tort. The State Defendants have waived sovereign immunity and qualified immunity for tort under R.I.G.L. §9-31-1 which states: "(a) The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this

46 Exhibit M.

47 Id.

chapter." Id. Therefore, assuming this court does exercise jurisdiction over the non-federal claims, Counts III – VII, the Plaintiff is entitled to maintain his negligence claims against the State Defendants and the individual defendants.

2) The State Defendants argue, regarding Count III, *inter alia*, that since Hernandez has available state tort claims... Count III must be dismissed."[48] However, the State Defendants overlook that they then proceed to give reasons why the other counts should be dismissed, for one reason or another. Plaintiff submits that if all other counts are in fact dismissed, he would then be left with only Count III, and the Folan requirement of "no statutory remedy"[49]

3) The State Defendants misquote "the plain language" of R.I. Gen. Laws §9-1-2 and fail to read the words "crimes **or offense**..." (emphasis supplied) Id. In addition, that same plain language states, "it shall not be any defense to such action that no criminal complaint for the crime **or offense** had been made." Id. Zarella[50] is inapplicable in the present situation because Zarella dealt with potential liability under a combination of R.I. Gen. Laws §9-1-2 "**and RICO"** Id. To read Zarella any differently would require the Court to ignore the plain language of R.I. Gen. Laws §9-1-2, making it applicable to "**crimes or offense... "** Id. The Defendants again[51] make the mistake of equating a warrant with a detainer by suggesting the detainer was facially

48 Document 23, p.18.

49 Folan v. State, 723 A. 2d 287, 292 (R.I. 199).

50 Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249 (R.I. 2003).

51 The detainer was not a facially valid warrant for the reasons discussed earlier, supra. Most significantly its legibility was challenging, it lacked a particularized description, did not reference any particular Nationality, required a field determination of "alien" status, applied only to an inmate, and was not issued by a neutral detached magistrate. The fact that it was meant to be issued for the Plaintiff (*Exhibit K)* does not make it facially valid after the fact. The fact that it needed to be explained by *Exhibit K* is testimony that is was not facially valid.

valid. Moody[52] does not apply to exonerate the Defendants based upon "justification" when the underlying premise is flawed. There was no justification for detaining a United States Citizen

4) The actions or conduct of refusing to accept the Plaintiff's money for bail is not objectively reasonable[53], nor is it reasonable to argue that the Plaintiff deprived the State Defendants the opportunity to inspect his citizenship papers while under their exclusive custody and control. Only a strained interpretation of the Plaintiff's testimony would lead to the conclusion that at least one person attempt to look into the immigration problem. The proper context of the inquiry was in response to Plaintiff's direct request to pay bail. (see FSDF, ¶15).

Finally, if arguendo, the Defendant's only wrongful conduct resulting in a two day wrongful detention is the failure to allow the Plaintiff to post bail, and/or the failure to accept his payment, then that failure would properly be considered a ministerial function imposed upon them by law since the Defendants have no justification to refuse to accept payment for bail, once an amount is set. "In Calhoun v. City of Providence, 120 R.I. 619, 390 A.2d 350 (1978), this [Rhode Island Supreme] Court held that the state was liable in tort for injuries arising from the failure of one or more of its judicial-department employees to perform similar ministerial functions imposed upon them by law." Bandoni v. State, 715 A.2d 580, 628, FN71 (R.I. 1998). Thus, as in Bandoni, Calhoun supports a finding that the Plaintiff's claim "should not be barred by the shield of governmental immunity. [Calhoun] at 633-34, 390 A.2d at 357 (no governmental immunity barred the plaintiff's claim for monetary damages when a negligent failure of the

52 Moody v. McElroy, 513 A. 2d 5, 8 (R.I. 1986).

53 At the conclusion of the Plaintiff's deposition, after having provided over 100 pages worth of testimony regarding the Defendants' unreasonable and wrongful conduct, it is not reasonable to presume that the Plaintiff would reiterate the entire testimony in response to the broad summary question to explain, inter alia, what the State did wrong. That line of questioning raised several objections, however the answers do not contradict the Amended Complaint, nor does it minimize the testimony. see generally, Exhibit 2, pp108-110.

clerk's office staff to recall an outstanding capias warrant led to the plaintiff's mistaken arrest and incarceration)." Bandoni, FN71.

**CONCLUSION:**

Summary Judgment should be denied for the reasons stated above. After working through the analysis and the mechanisms in place which normally operate to detain aliens and incarcerate convicted criminals or those awaiting trial, it is constitutionally offensive that those same systems could operate in such a way as to place the rights of an alien above those of a United States Citizen by protecting the alien from a detention, if at all, beyond 48 hours however permitting a United States Citizen to be detained seven days. There could be no greater offense to a naturally born United States Citizen or any greater offense to the right enjoyed by those citizens as guaranteed by the United States Constitution and the bill of rights, as made applicable to the States by the Fourteen Amendment.

The simple ministerial function of accepting bail would have greatly reduced the Plaintiff's wrongful detention, but his requests were ignored. In addition, the fact of his Citizenship and the right to claim protections accorded a United States citizen must be preserved and recognized in this litigation and in the future in such a way that the State Defendants permit this Plaintiff, and other to follow, the opportunity to make arrangements post-haste to demonstrate their citizenship status. The failure to permit such resolution within the context of a brief detention, whether at the courthouse or Prison, is repugnant to all United States Citizens born on this National soil of immigrant ancestors.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.______

Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

## CERTIFICATION

I hereby certify that on February 8, 2007, a true copy of the within, was served on Michael W. Field, Esq., at "mfield@riag.ri.gov" by electronic "CM/ECF" means only.

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.