UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs, | : | |
| vs. | : | C.A. No.: 06-164ML |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and | : | |
| DEPARTMENT OF CORRECTIONS, and | : | |
| ASHBEL T. WALL., Director of the Department of Corrections; in his official capacity, and | : | |
| JOHN DOE (ONE), Warden of the Department of Corrections Intake Service Center, in his official and individual Capacity, and; | : | |
| JOHN DOE (TWO), a/k/a "bailiff," alias John Doe, in his official and individual Capacity, and | : | |
| JOHN DOE (THREE) a/k/a "First Guard On Duty" alias Joe Doe, in his official And individual capacity, and | : | |
| JOHN DOE (FOUR) a/k/a "Second Guard On Duty" alias John Doe, in his official And individual capacity, | : | |
| JANE DOE (FIVE) a/k/a "Female Guard Duty" alias John Doe, in his official And individual capacity, | : | |
| JOHN DOE (SIX) a/k/a "Authority Figure On Duty" alias John Doe, in his official And individual capacity, | : | |
| JOHN DOE (SEVEN) a/k/a "Correctional Officer" alias John Doe, in his official And individual capacity, | : | |

JOHN DOE (EIGHT) a/k/a "Employee Assigning PINs" alias John Doe, in his Official and individual capacity, :

JOHN DOE(S) (NINE) a/k/a "Unidentified Guards on Duty" alias John Doe, in his Official and individual capacity :
Defendants, :

**DEFENDANTS', STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, AND ASHBEL T. WALL, IN HIS OFFICIAL CAPACITY'S, REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Now come the State Defendants, State of Rhode Island, Department of Corrections, and A.T. Wall, in his official capacity, and reply to Plaintiff Hernandez's Opposition memorandum. Although Hernandez raises a myriad of unsupported legal arguments, the State Defendants will limit their reply to those most pertinent.

I. Hernandez contends that individuals, including but not limited to Serge Etesse, are named defendants.

Hernandez's argument that his Amended Complaint identifies individuals is adequately addressed by the "John/Jane Doe" discussion in the State Defendants' Memorandum in Chief. For purposes of judicial economy, the one argument that the State Defendants would press at this time would be that in the event that this Honorable Court determines that Serge Etesse is a proper defendant, Serge Etesse, in his individual capacity, would be entitled to the defense of qualified immunity.

Qualified immunity analysis requires a three-step approach: "(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable

official would have believed that the action taken violated that clearly established constitutional right." Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005). Here, Hernandez has provided no evidence or argument that any constitutional right has been implicated.

Even assuming that Hernandez survives the first half of the qualified immunity analysis, there can be no doubt that Serge Etesse's brief interaction with Hernandez was objectively reasonable in light of the facts. Specifically, during his deposition, Hernandez related that after pleading nolo contendre, the 6th Division District Court Judge noted that Hernandez had immigration problems, after which Sheriff Etesse guided Hernandez to the holding cell just a few feet from the Judge's bench. The following colloquy demonstrates the sum of Sheriff Etesse's involvement:

> A: So, as soon as [the Judge said I had INS problems], I noticed that INS sign below the fine number, and later on, the officer next to me, I was cuffed at the time, he told me – he brought me back inside and put me in the small cell.
> Q: Okay. Let's go through this a little bit slower. You signed the paperwork?
> A: Yes.
> Q: And it was at this point that the judge said that you had INS problems?
> A: Yes.
> Q: What happened after the judge said you had INS problems?
> A: The officer next to me called me and guide[d] me back inside the cells.
> * * *
> Q: Now, from the time that you – from the time that you left the courtroom to the time that you were brought back to the cell, did you have any conversation with this officer?
> A: Yes. I told him that I can pay that fine, and he said to me, 'You have INS problems.'" *Deposition, p. 63-64 (attached as Exhibit A to Reply Memorandum).*

Accordingly, based upon these facts, Sheriff Etesse would be entitled to qualified immunity.[1]

---

[1] At another point in his Opposition Memorandum, Hernandez takes issue with the State Defendants' characterization that at least one John Doe examined Hernandez's protestations. *See Hernandez Opposition Memorandum, p. 7*. Specifically, Hernandez

Furthermore, Hernandez has presented no evidence that the State Defendants, or any of the various John Does, have an established policy of violating various rights of individuals with immigration detainers. In fact, the entire record is devoid of any person with an immigration detainer except Hernandez. At most, Hernandez alleges that various John Does have acted in a manner inconsistent with the established policies set forth in the State Defendants' memorandum in chief. Such conduct, however, does not attached the § 1983 injunctive relief liability Hernandez seeks in Count II. See Wilson v. City of Boston, 421 F.3d 45, 59 (1st Cir. 2005)("'We hold that municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'").

II. Other Issues

1. The Detainer

Central to Hernandez's argument is that the INS detainer and/or the Mittimus should not, or could not, have been issued against him. If fact, at one point in his Opposition memorandum, Hernandez appears to assert that a detainer cannot issue for an individual who is not "otherwise detained," but instead can only issue for an individual who has already been afforded due process and achieved "inmate" status. ***See Hernandez***

---

relates that this John Doe provided no information to Hernandez that he was not already aware of, i.e., immigration problems, and that the context of this John Doe's inquiry was in response to Hernandez's request to pay bail. Notwithstanding the above, the point that the State Defendants were trying to make is that following Hernandez's protests, at least one John Doe "took the papers" and "went to find out what was going on." ***Exhibit C, p. 72-73***. Hernandez's own testimony on this point is uncontradicted and clearly illustrates that contrary to Hernandez's arguments at least one John Doe did review Hernandez's claims.

*Opposition Memorandum, p. 12*. Hernandez cites no authority for this proposition and resolution of this issue requires consideration of only two undisputed issues.

First, no matter what arguments or issues Hernandez may have concerning the propriety of Immigration and Customs Enforcement (hereafter "ICE") issuing the detainer, the fact remains that ICE issued a detainer for Hernandez and the only defendant in this case, the State Defendants, had no role in issuing the detainer. ***See Exhibit K.*** The State Defendants, at the very least, are entitled to rely upon the detainer. Second, having established that a detainer was issued for Hernandez, ***see Exhibit K***, all of Hernandez's remaining arguments fail to acknowledge that the detainer itself provides sufficient legal authority to detain him. Specifically, 8 C.F.R.§287.7(d) provides that:

> "[u]pon a determination by the Department [of Homeland Security] to issue a detainer for an alien <u>not otherwise detained</u> by a criminal justice agency, such agency <u>shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department</u>." (Emphases added).

As demonstrated by the emphasized language of § 287.7(d), this provision contradicts Hernandez's argument that a detainer can issue only to an inmate who has already been afforded due process, and instead,§287.7(d) specifically contemplates the detention of an individual who is not an inmate, or who is "not otherwise detained." <u>See</u> <u>Kendall v. Immigration & Naturalization Service</u>, 261 F.Supp.2d 296, 301 n.2 (S.D.N.Y. 2003)("Because [8 CFR§287.7] applies only when a alien is not otherwise detained by a criminal justice agency, it does not apply to an alien who . . . has been remanded to custody in his pending criminal case."). As such, Hernandez's argument that the detainer should not, or could not, have been issued because he was not an "inmate" must

be rejected. Any argument that Hernandez may press that the detainer should not have been issued for him because he is not an "alien" must be directed at the agency issuing the detainer, and not the State Defendants who only effectuated the detainer against the person identified, i.e., Hernandez. See e.g., Liu v. Phillips, 234 F.3d 55 (1st Cir. 2000)(qualified immunity where local police officer wrongfully detained immigration suspect based upon INS representations).

2. Counts V and III

In his Opposition Memorandum Hernandez asserts that the State Defendants have "misquote[d]" the "plain language" of R.I. Gen. Laws § 9-1-2 and then proceeds to highlight that the above provision applies to "crimes or offense[s]." First, the undersigned has reviewed the State Defendants' Memorandum in Chief and represents to this Honorable Court that it did not "misquote" R.I. Gen. Laws § 9-1-2. Rather, it appears that Hernandez is arguing to this Court that R.I. Gen. Laws § 9-1-2 applies not only to "crimes," but could also be applied to "offense[s]" that are civil in nature. Such an interpretation ignores Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003)("[t]o establish liability under [] § 9-1-2 . . . a plaintiff must first establish that [a] defendant engaged in criminal activity"), as well as the plain language of the word "offense." See Black's Law Dictionary, 6th Edition (defining "offense" as "[a] felony or misdemeanor;" "a breach of the criminal laws[;]" "generally implies a felony or a misdemeanor infringing public as distinguished from mere private rights, and punishable under the criminal laws."). Since a criminal offense has not occurred, Count V must be dismissed.

Similarly, Hernandez's argument that Count III, violation of the Rhode Island Constitution, should survive because "if all other counts are in fact dismissed, he would then be left with only Count III, and the Folan requirement of 'no statutory remedy' would apply" is equally without merit. In fact, reduced to its essence, Hernandez's argument is that if he fails to state a cause of action under the numerous legal doctrines asserted, he is nonetheless entitled to an action directly under the Rhode Island Constitution. Such an interpretation would leave any plaintiff who is ultimately unsuccessful at trial or on a motion for summary judgment with a claim under the Rhode Island Constitution and is clearly inconsistent with Bandoni and Folan.

3. Negligence

Lastly, the State Defendants respond to Hernandez's claim that the doctrine of qualified immunity does not defeat liability in tort. *See Hernandez Opposition Memorandum, p. 18.* To explain, the State Defendants are not seeking to apply the doctrine of qualified immunity to Hernandez's negligence claim. Instead, the State Defendants submit that since the doctrine of qualified immunity applies to Hernandez's constitutional claims, and since the same set of facts serve to support Hernandez's negligence claim, as a matter of law Hernandez cannot establish that the State Defendants breach a standard of care, or acted in a manner that was not objectively reasonable. This interpretation is not a novel argument. See Roberts v. City of Forest Acres, 902 F.Supp. 662, 675 (D.S.C. 1995)("As this court has repeatedly observed, Defendant Jacko's determination that the Plaintiff was not immune from arrest was objectively reasonable. Therefore, the City is also entitled to summary judgment on the Plaintiff's cause of action for negligence or recklessness.").

III. Conclusion

Accordingly, for the reasons discussed above and in the State Defendants' Memorandum in Chief, the State Defendants respectfully request that summary judgment enter.

DEFENDANTS

STATE OF RHODE ISLAND
DEPARTMENT OF CORRECTIONS
AND ASHBEL T. WALL, in his
official capacity

By his Attorney
PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Michael W. Field

Michael W. Field, # 5809
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
Ph (401) 274-4400 ext. 2380
Fax (401) 222-2995

CERTIFICATION

I hereby certify that the instant Reply Memorandum was e-mailed on the 19th day of February, 2007, to the following individuals:

/s/ Michael W. Field

Joseph Anthony DiMaio, Esq.
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861