UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs, | : | |
| vs. | : | C.A. No.: 06-164ML |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and | : | |
| DEPARTMENT OF CORRECTIONS, and | : | |
| ASHBEL T. WALL., Director of the Department of Corrections; in his official capacity, and | : | |
| JOHN DOE (ONE) – (NINE)<br>Defendants, | : | |

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO A DUTY TO INVESTGATE PLAINTIFF'S CITIZENSHIP CLAIMS**

Now come the Defendants and seeks to exclude evidence relating to a duty to investigate Plaintiff's citizenship claims. The Defendants submit that such evidence is barred by Rules 401, 402, and 403 of the Rules of Evidence. A memorandum of law is attached.

Respectfully submitted,
DEFENDANTS

By its Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Michael W. Field

Michael W. Field, #5809
Special Assistant Attorney General
Brenda Baum, # 5184

Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 Ext. 2380
Fax (401) 222-2995
**mfield@riag.ri.gov**
**bbaum@riag.ri.gov**

## CERTIFICATION

I, the undersigned, hereby certify that a copy of the foregoing Motion was e-mailed, on this 26th day of June, 2007 to those indicated below:

Joseph DiMaio, Esq.
**contact@mckinnonharwood.com**

/s/ Michael W. Field

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs, | : | |
| vs. | : | C.A. No.: 06-164ML |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and | : | |
| DEPARTMENT OF CORRECTIONS, and | : | |
| ASHBEL T. WALL., Director of the Department of Corrections; in his official capacity, and | : | |
| JOHN DOE (ONE) – (NINE)<br>Defendants, | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO A DUTY TO INVESTGATE PLAINTIFF'S CITIZENSHIP CLAIMS**

## I. SUBJECT MATTER OF MOTION IN LIMINE

The State Defendants seek to bar testimony or other evidence presented by Plaintiff Hernandez that any State employee, including but not limited to those employed at the Sixth Division District Court and/or the Department of Corrections, failed to investigate Plaintiff Hernandez's claims that he was a United States citizen and/or that an "INS" or "ICE" detainer should not have been issued against Hernandez. Such evidence suggests that the State Defendants had an affirmative responsibility to review the "ICE" detainer and, presumably, after doing so, release Plaintiff from custody despite a detainer and Mittimus ordering his detention.

It is expected that Plaintiff Hernandez would testify that on several occasions while in custody, he asked 6th Division District Court officers and/or Department of Corrections officers to examine the circumstances of the "INS" or "ICE" detainer issued against him since he was a United States citizen, born in the United States. It is also expected that the Plaintiff will seek to call Jetzabel Ruano and Alba Ruano, both of whom visited Hernandez while in custody at the Department of Corrections. It is expected that both Jetzabel Ruano and Alba Ruano will seek to testify that when they visited Hernandez at the Intake Service Center, one or both visitors attempted to bring papers (e.g., passport, birth certificate, social security card) evidencing Plaintiff Hernandez's citizenship. It is expected that both Jetzabel Ruano, Alba Ruano, and perhaps even Plaintiff Hernandez, will seek to testify that unknown Department of Corrections' officers refused to allow the visitors to bring these documents into the Intake Service Center.

Examples of testimony or other evidence that the State Defendants seek to bar include:

a. Plaintiff Hernandez's testimony that he told/requested that officers assigned to the 6th Division District Court examine the circumstances of his detention since he was a United States citizen;

b. Plaintiff Hernandez's testimony that he told/requested that officers assigned to the Intake Service Center, Department of Corrections, examine the circumstances of his detention since he was a United States citizen;

c. Any testimony, including but not limited to testimony by Jetzabel Ruano and Alba Ruano, that they sought to present documentary evidence to officers at the Department of Corrections supporting Plaintiff Hernandez's claims to be a United States citizen.

## II. **RATIONALE**

The State Defendants seek to bar the above evidence for two related reasons: no legal duty to investigate and relevance/undue prejudice.

There is no legal duty for an arresting or detaining officer to investigate a detainee's protestations of citizenship, or to require the admittance/examination of documents into the Adult Correctional Institution that may support a particular inmate's claims of innocence or mistaken identity. Since there is no legal duty to examine such protestations or documents, evidence offered by Plaintiff Hernandez to demonstrate that the State Defendants did not examine his protestations or documentary evidence is simply not relevant and is prejudicial. Since Plaintiff Hernandez's instant lawsuit sounds in negligence, reference to Rhode Island Supreme Court case law is instructive.

In Moody v. McElroy, 513 A.2d 5 (1986), the Rhode Island Supreme Court examined a false imprisonment claim leveled against law enforcement officers who detained an individual named in a facially valid arrest warrant, but which was issued by a court without proper jurisdiction. Since the arrest warrant was facially valid, the Supreme Court determined that a false imprisonment claim could not lie. In doing so, however, the Court's discussion provided important guidance concerning whether law enforcement officers had a legal duty to investigate claims of innocence by those detained.

Citing with approval from Restatement (Second) Torts § 123 (1965) comment a, the Supreme Court explained:

> "[a] warrant is valid even though the Court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged. The guilt or innocence of the accused is not a matter which concerns the

> officer. It is his duty to serve the warrant and he [may] do so, even though he has reason to believe or even knows that the person for whose arrest the warrant is issued is in fact innocent of the offense with which he is charged." (Emphasis added). Id. at 8.

Later in its Opinion, the Supreme Court continued that generally, "it is not the duty of a law-enforcement officer to investigate the procedures that led to the issuance of the warrant. * * * Absent special circumstances, an officer's sole duty is to make the arrest, not to pass judgment on the judicial act or reflect on the legal effect of the adjudication." Id. (Emphasis added).

Although Moody concerned the validity of an arrest warrant, and not a detainer, the principles discussed by the Rhode Island Supreme Court – namely the proper separation of functions between law enforcement and judicial – are equally present in this case and have been discussed at length by the United States Supreme Court and the First Circuit Court of Appeals.

For instance, in Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695 (1979), the United States Supreme Court examined whether law enforcement officers' failure to investigate a detainee's claims of innocence violated the Due Process Clause. The Court responded in the negative, explaining that:

> "[a] reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers * * * is entirely consistent with 'due process of law.' * * * * [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim." Id. (Emphasis added).

In similar situations, the First Circuit Court of Appeals has also recognized a separation of functions. In Thompson v. Olson, 798 F.2d 552 (1st Cir. 1986), for example, the Court of Appeals examined a warrantless arrest of a suspect believed to be under the influence of drugs or alcohol, but whom was actually suffering from insulin shock. Despite the suspect's claims that his condition was the result of a medical reaction, and not drugs or alcohol, officers arrested the suspect and transported him to the police station, where the true circumstances of the suspect's condition were later determined.

In the course of examining Maine's false imprisonment law, the First Circuit expressed sentiments similar to those discussed by the Rhode Island Supreme Court in Moody. For instance, the Court of Appeals related that "[g]enerally, once the arrest has been properly effected, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released." Id. at 556 (emphasis in original). Moreover, with particular significance to the matter at hand, the Court expressed what should be obvious to all: "[p]olice officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations of whether probable cause has dissipated to such an extent that the suspect should be released." Id. at 557. (Emphasis added). See also Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999)("[r]egardless of the merits of the defense, our legal system simply does not rely on police officers to determine its bona fides, even though they may have information bearing on that ultimate question and even though they may harbor strong and informed opinions one way or the other. * * * To place on police officers the

additional burden of determining, after a legitimate arrest pursuant to a facially valid warrant, whether the person detained is or is not the guilty party would blur the usual separation of functions.").

## III. **ANALYSIS**

Here, Plaintiff Hernandez can point to no legal authority requiring officers assigned to the Sixth Division District Court and/or the Department of Corrections to investigate Plaintiff Hernandez's self-exonerating claims of innocence. In fact, as discussed above, case law from Rhode Island, this Circuit, and the United States Supreme Court lead to the opposite conclusion. Similarly, there is simply no legal duty for officers assigned to the Intake Service Center to allow visitors to bring documents or other tangible items into the Adult Correctional Institution and neither deliver them to an inmate or to personnel to review in an attempt to support Plaintiff Hernandez's claims. In fact, Department of Corrections' policy prohibits visitors from giving/receiving articles to/from inmates and forbids items from being accepted from a visitor for an inmate without prior approval of the Warden. ***See Exhibit A***.

Presumably, Plaintiff Hernandez will attempt to distinguish the above cases as cases that either did not involve a detainer or as cases that involved custody pursuant to an arrest warrant, which would obviously necessitate prior court involvement and approval. Neither distinction affects this case.

While Hernandez's detainment in this case was not procured through an arrest warrant (as in most, but not all of the above cases), Hernandez was detained pursuant to a "Mittimus" Order, which like an arrest warrant necessarily involves prior court action. This "Mittimus" Order, issued by the Sixth Division District Court Judge on June 16,

2005, is addressed to "any Officer and to the Warden of the Adult Correctional Institutions" and mandates that:

> "you are hereby commanded to take the defendant, to convey him/her to the Adult Correctional Institutions, and to deliver him/her together with this precept to the Warden thereof. The Warden is hereby required to receive the defendant into custody and safekeeping until this order is performed in all its parts or until the defendant is discharged by order." ***See Exhibit B.***

Considering that the "Mittimus" Order was issued after Hernandez appeared before the Sixth Division District Court – as opposed to an arrest warrant that is typically issued ex parte and prior to a defendant's physical appearance before a court – the instant case presents even a stronger case for the proper separation of functions whereby Disrict Court officers and/or Department of Corrections officers are not required to investigate (and perhaps release) a detainee based upon self-exonerating claims of innocence and contrary to a Mittimus or some other court order.[1] See Thompson, 798 F.2d at 557 ("Police officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations of whether probable cause has dissipated to such an extent that the suspect should be released.")(concerning a warrantless arrest).

## IV. CONCLUSION

Since there is no legal duty to examine the protestations of a person held in custody, the State Defendants respectfully request that this Honorable Court bar Plaintiff

[1] In today's technical age, it goes without saying that the submission of a birth certificate, social security card, and passport to support one's identification and self-exonerating statements is less than full proof. See e.g., United States v. Cabrera, 208 F.3d 309 (1st Cir. 2000)(affirming conviction before Lisi, J., for producing counterfeit identification, including birth certificates and social security cards).

Hernandez from testifying or otherwise producing evidence that he tried to bring to District Court officers' and/or Department of Corrections officers' attention that he was a United States Citizen who should not have been detained pursuant to an Immigration and Customs Enforcement detainer. For similar reasons, the State Defendants respectfully request that this Honorable Court bar Plaintiff Hernandez from testifying or otherwise providing evidence that District Court officers and/or Department of Corrections officers did not investigate his claims of innocence and/or would not examine other documentary evidence, including but not limited to, documents attempted to be brought into the Intake Service Center by visitors Jetzabel Ruano and Alba Ruano.

Respectfully submitted,

DEFENDANTS

By its Attorney,
PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Michael W. Field
____________________________

Michael W. Field, #5809
Special Assistant Attorney General
Brenda Baum, # 5184
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 Ext. 2380
Fax (401) 222-2995
**mfield@riag.ri.gov**
**bbaum@riag.ri.gov**

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing Memorandum was e-mailed, on this 26th day of June, 2007 to those indicated below:
Joseph DiMaio, Esq.
contact@mckinnonharwood.com

/s/ Michael W. Field