UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO HERNANDEZ<br>Plaintiffs,<br><br>vs.<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and<br><br>DEPARTMENT OF CORRECTIONS, and<br><br>ASHBEL T. WALL., Director of the Department of Corrections; in his official capacity, and<br><br>JOHN DOE (ONE) – (NINE)<br>Defendants, | : | C.A. No.: 06-164ML |

**DEFENDANTS' PRE-TRIAL MEMORANADUM**

Pursuant to this Honorable Court's Order, Defendants submit this pre-trial memorandum.

**I. Expected Defense**

Defendants expect to counter Plaintiff Hernandez's assertion that he asked 6th Division District Court officers, as well as Department of Corrections officers, to pay bail during his incarceration period. Defendants expect to present testimony from individuals who either had contact with Plaintiff or would have had contact with Plaintiff, as well as to present testimony concerning the normal procedures that would have been undertaken in Plaintiff's situation. A brief summary of their expected testimony is as follows:

1. Keeper of the Records, Immigration and Customs Enforcement: Provide foundation testimony to introduce the "ICE detainer" document for Plaintiff Hernandez.

2. Manny DaSilva: Sheriff at Sixth Division District Court, holding cell area. Will testify that he works in the holding cell area where criminal defendants are brought after their courtroom appearance. Upon presentment from the courtroom, Sheriff DaSilva routinely reviews the paperwork and asks whether the criminal defendant can make bail. Criminal defendants who can pay bail are processed accordingly.

3. Fred Habion: Captain, Records and Identification, Department of Corrections. Expected to testify concerning the intake process for new commitments at the Department of Corrections, Intake Service Center, including but not limited to the fingerprinting process. Caption Habion is expected to testify concerning the fingerprinting of Hernandez.

4. Fred Gautieri: Counselor, Intake Service Center, Department of Corrections. Expected to counter Plaintiff's testimony that he requested to use the office telephone.

Even if a jury finds that the Plaintiff did request to make bail, the State Defendants will assert the following legal doctrines in defense: 8 U.S.C. § 287.7(d), qualified immunity, and R.I. Gen. Laws § 9-31-1 et. seq. These legal doctrines, as well as other expected trial issues, are discussed below.

**II**. **Memorandum of Supporting Law on Case Issues**

A. 8 U.S.C. § 287.7

Plaintiff Hernandez was initially placed into the custody of the State Defendants in the mid-morning hours of Thursday, June 16, 2005, until his transfer to Immigration and Customs Enforcement (hereafter "ICE") agents in the mid-morning hours of

Wednesday, June 22, 2005.[1] As explained above, the State Defendants expect to demonstrate that Plaintiff Hernandez did not ask to make bail during his confinement period. However, even if a jury determines that Plaintiff Hernandez was denied an opportunity to make bail, Defendants' liability would not begin to accrue at this point in time, but instead, would be subject to the provisions of 8 U.S.C. § 287.7. Specifically, 8 U.S.C. § 287.7 provides:

> "[u]pon a determination by the Department [ICE] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." (Emphases added).

Applying the above provision to this case, this Honorable Court has already determined that even if Hernandez requested to make bail upon being placed into State custody on June 16, 2005, as a matter of law, the State Defendants are not liable to Plaintiff Hernandez for any time period prior to June 20, 2005. *See Exhibit A (Order)*. In fact, as a starting point, Plaintiff Hernandez did not come into the custody of the State Defendants until ordered held by a Sixth Division District Court Judge in the mid-morning hours of June 16, 2005. Accordingly, even if a jury determines that Plaintiff Hernandez immediately requested, and was denied the opportunity to make bail, pursuant to 8 U.S.C. § 287.7, liability would not accrue until the mid-morning hours of Monday, June 20, 2005. Based on the above, if a jury determines that Plaintiff Hernandez was

---

[1] Hernandez was in the custody of the Pawtucket Police Department from mid-afternoon on June 15, 2005 until the mid-morning hours of June 16, 2005.

denied the opportunity to make bail, determining the time of the denial is important since liability would not accrue until the time period specified in § 287.7 elapsed.[2]

B. Fed. R. Evid. 406 – Habit or Routine Evidence

As explained earlier, most, if not all of the State's witnesses, will testify concerning their routines in processing individuals in situations similar to Hernandez, i.e., bail and an ICE detainer. For example, Sheriff DaSilva will testify concerning his routine in processing criminal defendants held pending bail who had an ICE detainer; Captain Habion will testify concerning the routine in the intake process for someone who requests to pay bail, as well as the fingerprinting process and other routine intake procedures facing Plaintiff Hernandez; and Mr. Fred Gautieri will testify concerning his routine in allowing access to telephones within his office. Such testimony is consistent with Fed. Evid. R. 406, which provides "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

As noted by one commentator, "Rule 406 provides for the admissibility of habit testimony of an individual to prove that this conduct on a particular occasion was in conformity with that habit." Graham, Handbook of Federal Evidence § 406:2 (6th Ed. 2006). By its terms, Rule 406 "admits evidence of habit or routine practice whether corroborated or not and regardless of the presence of eyewitnesses." Id. at § 406:1. This Circuit's interpretation and application is consistent with Professor Graham's observations.

---

[2] For this reason, Defendants will propose a special verdict form.

For instance, in United States v. Newman, 982 F.2d 665, 668 (1st Cir. 1992), the Court of Appeals explained:

> "[u]nder Rule 406, competent evidence of a person's 'habit' may be admissible to prove conduct in conformity with the habit on a particular occasion. The party offering the evidence must establish the habitual nature of the alleged practice. As with other exclusionary rulings, the party challenging an exclusion of habit evidence under Rule 406 bears the heavy burden of demonstrating on appeal that the trial court abused its discretion.
>
> "Habit evidence under Rule 406 may be probative of "'the regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn[.]'" Although there are no 'precise standards' for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: 'adequacy of sampling and uniformity of response.' These factors focus on whether the behavior at issue 'occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances.' The requisite regularity is tested by the "'ratio of reaction to situations.'" It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances "'numerous enough to [support] an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation.'" (citations and footnote omitted)(first alteration added, second alteration in original).

Here, Defendants submit that the proposed testimony of DaSilva, Habion, and Gautieri is consistent with Rule 406. By the very nature of their law enforcement roles, all three witnesses are involved in a high volume repetitive routine on a daily basis. Sheriff DaSilva has been the officer assigned to the holding cell area for various 6th Division District Court courtrooms for approximately four (4) years and processes between one hundred (100) and one hundred and fifty (150) inmates per day. Captain

Habion has been located at the Records and Identification Unit, Department of Corrections, for the past twenty (20) years and as Captain for the past seventeen (17) years. As Captain he supervises (and participates) in the records and identification process involving 17,000 inmates per year. Mr. Gautieri has been at the Intake Service Center for the past thirty-nine (39) years and during this time period has acted as a counselor to inmates for the past thirty-five (35) years.

The Defendants submit that based upon the above brief background, the testimony of DaSilva, Habion, and Gautieri is admissible pursuant to Rule 406. All three witnesses will testify concerning routine protocols and procedures, as well as what their reaction would be to Plaintiff Hernandez's factual circumstances. Defendants expect to elucidated further testimony from these three witnesses consistent with the required foundation set forth in Newman.

C. Governmental Tort Liability Act, R.I. Gen. Laws § 9-31-1 et seq.

In this case, since Plaintiff's only remaining claim concerns a state law negligence claim, reference to the Governmental Tort Liability Act is appropriate. Pursuant to R.I. Gen. Laws § 9-31-1, the State of Rhode Island waived its immunity to tort liability. Despite this waiver, Chapter 31 provides important limitations on any tort award.

Specifically, R.I. Gen. Laws § 9-31-2 provides that any recover "shall not exceed the sum of one hundred thousand dollars ($100,000)." Moreover, in a tort action, the State is not liable for pre-judgment interest, post-judgment interest, or costs. See Mulvaney v. Napolitano, 671 A.2d 312 (R.I. 1995). Accordingly, any award in this case, must be limited solely to actual damages. Id. at 313.

D. Qualified Immunity

The State Defendants submit that the remaining claim of negligence against the State should be dismissed pursuant to the doctrine of qualified immunity. The Rhode Island Supreme Court has explained that cases from the United State Supreme Court:

> "establish that qualified immunity shields [law enforcement officers] from suit for damages if 'a reasonable officer could have believed [an arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.' Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity. Ensey v. Culhane, 727 A.2d 687, 691 (R.I. 1991)(emphasis added)(citations omitted).

The Rhode Island Supreme Court added "the question of immunity should not be placed in the hands of the jury and should ordinarily be decided by the Court long before trial." Id.

Although federal case law traditionally applies the doctrine of qualified immunity to individuals, and not the State, as well as to constitutional claims, and not state negligence claims, legal authority exists to apply qualified immunity to the State Defendants in this negligence action.

It is well-recognized that in Rhode Island, the doctrine of qualified immunity may be applied in a state negligence action. Specifically, in Hatch v. Town of Middletown, 311 F.3d 83 (1st Cir. 2002), the Court of Appeals reviewed, inter alia, a claim for invasion of privacy relating to the public disclosure of certain information. In doing so, the First Circuit reviewed Pontbriand v. Sundlun, 699 A.2d 856 (R.I. 1997) and Ensey v. Culhane, 727 A.2d 687 (R.I. 1999), and observed that "Rhode Island's high court has left little doubt that the defense [of qualified immunity] exists for state officers under certain

circumstances." Hatch, 311 F.3d at 89. Leaving little doubt as to application of qualified immunity in the state law arena, the Court of Appeals concluded:

> "Pontbriand and Ensey reflect Rhode Island's recognition of a qualified immunity defense under state law analogous to the federal doctrine established by the United States Supreme Court in Harlow v. Fitzgerald, cited with approval in both Rhode Island decisions, and routinely applied in § 1983 cases. Hence, we conclude that Hatch's concession that qualified immunity is available to officers defending state law claims is well grounded in the law of Rhode Island." Id. at 90

Other cases from this federal district apply the Hatch recognition. See Hopkins v. State, 2007 WL 1784025 *8 (D.R.I. 2007)(Lagueux, J.)("Qualified immunity also protects DeGenova from the Rhode Island state law claims"); Carter v. Lindgren, 2006 WL 2850572 (D.R.I. 2006)(Lisi, J.)(applying qualified immunity to state law claims).

While the application of the qualified immunity doctrine in a state negligence case is now well-recognized, the State Defendants acknowledge that application to the State or other officials acting in an official capacity is less developed. Nevertheless, Defendants have discovered at least one case where qualified immunity was applied to State officers. See Noel v. Paradis, 1994 WL 931004 * 2 (R.I. Super. 1994)(unpublished)("This Court is further satisfied that the State, and its officers acting in an official capacity, enjoy a qualified immunity as a matter of law, since the director's conduct violated no clearly established statutory or constitutional rights of these plaintiffs of which any reasonable person would have known."). Given this Superior Court decision, Defendants submit that Rhode Island recognizes the application of qualified immunity to the State.

Having addressed two threshold matters, the remaining qualified immunity analysis is straightforward and requires a two-prong approach. "First, if the right asserted

by the plaintiff was 'clearly established' at the time of its alleged violation, we are required to assume that the right was recognized by the defendant official." Hatch, 311 F.3d at 89. "[S]econd, we will deny the immunity claim if a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right." Id.

Here, Defendants submit the focus is on the second prong. Although Defendants expect to establish that Plaintiff Hernandez did not request to make bail, even if a jury finds otherwise, the State Defendants submit that the circumstances of this case require the finding that Defendants acted reasonably under the circumstances. In particular, the Defendants expect to demonstrate that a person in Hernandez's position – held pending bail with an ICE detainer – is eligible to make bail as soon the person in custody has the financial resources to do so and requests to make bail. Defendants expect the testimony to demonstrate that if Sheriff DaSilva, Captain Habion, Mr. Gautieri, or any other State employee, were aware that Hernandez had the resources and requested to pay bail, he would have been permitted to do so. Given the evidence that the Defendants expect to elicit, Defendants submit that they acted in a manner objectively reasonable under the circumstances and should be afforded qualified immunity.

Likewise, Defendants submit that even if the qualified immunity defense is not available to the State, as opposed to individuals, it is quite evident that the "State" must act through individuals. Although this civil cause of action has never named "individuals" because of the way it was pled, had individuals been named it is readily apparent that their individual actions would have been entitled to qualified immunity. Since the same set of facts that would have supported Hernandez's negligence claim

against "individuals" is barred by the "objectively reasonable" prong of the qualified immunity test, as a matter of law, Hernandez cannot establish using the same facts that the "State," acting through individuals, beached a standard of care or otherwise acted in a manner that was not objectively reasonable under a negligence analysis. See Roberts v. City of Forest Acres, 902 F.Supp. 662, 675 (D.S.C. 1995)("As this court has repeatedly observed, Defendant Jacko's determination that the Plaintiff was not immune from arrest was objectively reasonable. Therefore, the City is also entitled to summary judgment on the Plaintiff's cause of action for negligence or recklessness.").

Accordingly, for the reasons stated above, even if Plaintiff Hernandez is able to demonstrate that at some point during his incarceration from June 16, 2005 until June 22, 2005, he requested to make bail, the State Defendants are entitled to: (1) detain Hernandez for the time period set forth in 8 U.S.C. § 287.7, (2) the defense of qualified immunity, and (3) as a matter of law, a determination that they acted in a manner that was objectively reasonable, and therefore, did not breach a standard of care.

E. Lack of Expert Testimony to Establish Duty of Care Standard

Lastly, Defendants submit that Hernandez's failure to present expert testimony concerning the standard of care is also fatal to his claim. The Rhode Island Supreme Court has stated that "[e]xpert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge." Seide v. State, 875 A.2d 1259, 1271 (R.I. 2005). "[I]f all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony." Id.

Here, the issues raised by Hernandez are not within the common knowledge of jurors, and accordingly, expert testimony is required to establish a standard of care and a breach of the standard. Specifically, Hernandez claims that under the circumstances during his incarceration from June 16, 2005 to June 22, 2005, 6th Division District Court employees and/or Department of Correctional officers should have permitted him to make bail. Hernandez's allegation necessarily concerns the day-to-day inner workings and procedures for processing (and incarceration) of criminal defendants at the 6th Division District Court and the Department of Corrections – a subject matter that is inherently outside the scope of a lay juror's knowledge. See e.g., Hughes v. District of Columbia, 425 A.2d 1299, 1303 (D.D.C. 1981)("The reasonable prudent juror cannot be expected to appreciate the ramifications of prison security as well as the parallel considerations involving the safekeeping of prisoners, and therefore, whether, under given circumstances, reasonable care was exercised."). The Rhode Island Supreme Court's opinion in Seide also supports this conclusion.

For instance, in Seide, the Court examined a civil action caused by a high-speed chase initiated by law enforcement. The Seide defendants proffered that "expert testimony was required because '[t]he proper manner of conducting a high[-]speed pursuit, and in particular when to break off * * * the pursuit, is not an area that lies within the common knowledge of a jury." Id. at 1271. The Court rejected this argument, and in determining that expert testimony was not required, related that "juries are comprised of members of the motoring public familiar with the state's highway system and its traffic laws, including speed limits, red lights, stop signs, and one-way streets." Id.

Here, the opposite is true. While Seide concerned whether the state highway system and compliance with traffic laws was within the common knowledge of law abiding jurors, this case concerns whether a reasonable person in the position of a 6th Division District Court sheriff or a Department of Corrections officer should have been aware that Hernandez sought to post bail under the circumstances and breached a standard of care by failing to allow him to do so. Such a determination requires the consideration of several factors within the framework of a correctional system, such as the facially valid ICE detainer, a Mittimus order directing Hernandez to be held at the Department of Corrections, a Writ of Habeas Corpus directing Hernandez to be presented to the 6th Division District Court on Tuesday, June 21, 2005, as well as Hernandez's alleged statements, which must be considered in the context of a prison system. See e.g., Thompson v. Olson, 798 F.2d 552, 557 (1st Cir. 1986)("[p]olice officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations.").

Because the manner and procedures by which Hernandez was processed and detained are not familiar to lay jurors – and more importantly since lay jurors cannot determine the standard of care (or breach) of an objectively reasonable sheriff or correctional officer in a situation in which they are utterly unfamiliar – Defendants respectfully submit that expert testimony is required to establish a standard of care and breach of that standard. Since Plaintiff Hernandez has not disclosed an expert witness – and since discovery has closed – Defendants submit that a Rule 50 motion will be appropriate.

## III. Expected Length of Trial

Defendants expect a 2-3 day trial.

Respectfully submitted,

DEFENDANTS

By its Attorney,
PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Michael W. Field
__________________________

Michael W. Field, #5809
Special Assistant Attorney General
Brenda Baum, # 5184
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 Ext. 2380
Fax (401) 222-2995
**mfield@riag.ri.gov**
**bbaum@riag.ri.gov**

## CERTIFICATION

I, the undersigned, hereby certify that a copy of the foregoing Memorandum was e-mailed, on this 28th day of June, 2007 to those indicated below:

Joseph DiMaio, Esq.
contact@mckinnonharwood.com

/s/ Michael W. Field
__________________________